HENDERSON *v.* THE STATE.

No. 17172.   July 12, 1950.

208

*E. E. Moore Jr.* and *S. S. Robinson,* for plaintiff in error.

*Eugene Cook, Attorney-General, Wright Lipford, Solicitor-General, Shirley C. Boykin,* and *Frank H. Edwards,* contra.

ALMAND, Justice. ■ Special ground 1 of the motion for a new trial complains of the court's charge on the law of alibi, and asserts that the charge was erroneous and harmful to the defendant, (a) because it injected into the case a contention and issue not made either by the plea or the evidence of the defendant; and (b) the charge put upon the defendant the burden of substantiating his statement to the jury by testimony independent of his statement.

The defendant in his statement to the jury said: "The night of this killing, the night it occurred, I was at home in my bed asleep. Next morning I went up to my boss man and they told me a man got killed. That is all I know about it. That is all in the world I know about it. I am innocent."

In *Taylor* v. *State,* 155 *Ga.* 785 (118 S. E. 675), this court had before it practically the same factual situation and contention that is here made. In holding that it was not erroneous for the court to charge on the theory of alibi, though it was not expressly set-up as a defense, and was only incidentally involved under the statement of the defendant, the court on page 787 said:

"The defendant introduced no evidence, but made a statement to the jury. In his statement he said that he and the deceased, on Tuesday morning the day on which the latter is alleged to have been murdered, went to the home of one Sharpe; that he left the deceased there, and came back to his home, and that was the last he saw of the deceased until he found his dead body upon the following Friday, morning. Here by necessary

implication, if not by express and direct assertion, the defendant set up the plea that he was not at the scene of the homicide; and while the court was not required to charge upon any theory of defense arising solely from the defendant's statement (*Lampkin* v. *State,* 145 *Ga.* 40, 88 S. E. 563), he was authorized to give an appropriate and correct instruction upon the defense of alibi under the statement of the accused, and such instruction was not erroneous because inappropriate under the facts of the case. *Westbrook* v. *State,* 91 *Ga.* 11 (16 S. E. 100). Even though in this case the charge upon the law of. alibi was not appropriate, the giving of such instruction is not cause for the grant of a new trial, when it appears that the accused was not thereby injured. *Knight* v. *State,* 114 *Ga.* 48 (4) (39 S. E. 928, 88 Am. St. R. 17)." Though this was not a decision by a unanimous court, two Justices dissenting, we think that the ruling there made is sound, and is controlling here. See also *Westbrook* v. *State,* 91 *Ga.* 11 (2) (16 S. E. 100).

We hold that the court's charge on the theory of alibi was not subject to the objections urged by the defendant.

■ Special ground 5 complains that the court, during the reception of the testimony of the lady who was with the deceased at the time of the killing and the only eyewitness to the killing, erroneously excluded from the courtroom all persons except the jury, the defendant's attorneys, the prosecuting attorney, court officials, newspaper reporters, and the families of the defendant and the prosecutor. This order of exclusion was made under an agreed stipulation between counsel for the State and the defendant.

In this ground of the motion, it is alleged that the agreement between the defendant's attorneys and the solicitor-general was entered into out of the presence and without the knowledge of the defendant. It is asserted that the order of exclusion was erroneous because, (a) said order was an abuse of the court's discretion, and denied to the defendant a public trial; (b) the order and action of the trial judge violated a right of the defendant guaranteed to him by art. 1, sec. 1, par. 5 of the Constitution of Georgia, which provides: "Every person charged with an offense against the laws of this State shall have . . a public . . trial"; (c) such order of exclusion denied to the de-

fendant the right to a public trial granted to him by the Fourteenth Amendment of the Constitution of the United States; and (d) that Code section. 81-1006 is unconstitutional as being violative of the Fourteenth Amendment of the Federal Constitution.

It appears from the record that after the court had permitted the jury to retire, the trial judge in open court, in the presence of the defendant and his attorneys, made an announcement from the bench in regard to counsel representing the State and the defendant having agreed that the testimony of the witness should be given before the jury, with the defendant, the attorneys, court officials, newspaper representatives and the families of the prosecutor and the defendant present, and that all others "may not return to the courtroom until two o'clock p. m." It does not appear that the defendant objected to such procedure, and the first time that he did object and contend that such agreement was entered into without his knowledge, presence, or consent, was after the verdict was rendered and in his amended motion for a new trial. We are therefore met with the question as to whether or not the defendant has waived his right to assert that his constitutional right to a public trial was denied. The nature and character of the rights guaranteed to a defendant under the provisions of art. 1, sec. 1, par. 5 of the Constitution have been before this court many times. It has been held that a defendant may waive the privilege and benefit of counsel guaranteed by this paragraph. *Elam* v. *Rowland*, 194 *Ga.* 58 (20 S. E. 2d, 572). Likewise, it has been held that a defendant may waive being furnished with a copy of the indictment or accusation and list of witnesses. *Mitchell* v. *State*, 22 *Ga.* 211 (4) (68 Am. D. 493). The right to a separate trial in a capital case may be waived. *Towns* v. *State*, 149 *Ga.* 613 (1) (101 S. E. 678). In *Vaughn* v. *State*, 88 *Ga.* 731 (16 S. E. 64), this court held that, though the formality of putting a panel of the jury on the defendant be not expressly waived, it may be impliedly waived by his taking part in the selecting of a jury from the panel. In *Sarah* v. *State*, 28 *Ga.* 576 (1), it was held not error to allow a prisoner in a capital case to be tried by a jury taken from the grand jury list by consent of counsel for both the State and the accused. In *Denson* v. *State*, 150 *Ga.* 618 (104 S. E. 780), the

defendant was convicted of rape and sentenced to death. During the progress of the trial the State offered in evidence the testimony of the woman alleged to have been ravished. This testimony, it was admitted, was taken before the grand jury, and counsel for the State and for the defendant were present in the grand jury room, and examined and cross-examined the witness, and it was stipulated between the parties that her depositions could be read in evidence. It was held that, by reason of the stipulation of his counsel, the defendant waived his right to be confronted by the witness. This court ruled as follows: "A conviction in a capital case cannot be set aside for the admission of depositions in pursuance of voluntary stipulations by the parties. By making such stipulation the defendant waives his constitutional right to be confronted by the witness. The stipulation is binding whether made by the defendant or his counsel, and whether his counsel be of his own choosing or are appointed by the court to represent him in the trial of his case; especially where no objection to the admission of the depositions, or to the power of counsel to make the agreement, was raised." See also *Cawthon* v. *State*, 119 *Ga.* 395 (46 S. E. 897). Under the foregoing authorities, it must be held that the defendant waived his right to now object that the order of exclusion denied him a public trial, and denied him due process of law.

It is generally held that the right to a public trial may be waived by a defendant. Gibson *v.* United States, 31 Fed. (2) 19 (certiorari denied, 279 U. S. 866, 49 Sup. Ct. 481, 73 L. ed. 1004) ; Keddington *v.* State, 19 Ariz. 457 (172 Pac. 273) ; People *v.* Tugwell, 32 Cal. App. 520 (163 Pac. 508); State *v.* Keeler 52 Mont. 205 (156 Pac. 1080); Irwin *v.* State, 220 Ind. 228 (41 N. E. 2d, 809) ; State *v.* Nyhus, 19 N. D. 326 (124 N. W. 71).

■ The conviction of the defendant was entirely dependent upon circumstantial evidence. The direct evidence proved without dispute that the deceased was killed by a criminal agency, and that the killing, in law, was murder. The question we must answer is: were the facts and circumstances sufficient to authorize the jury to say beyond a reasonable doubt that the defendant was the person who did the killing? The facts and circumstances proven by the State are as follows: On the night of October 31, 1948, the defendant owned a special Smith & Wesson pistol.

One Almon bought it from the defendant in November or December, 1948, and sold it in November, 1949, to one Cosper, who pawned it to Beeber in Atlanta in November, 1949. An Atlanta detective recovered the pistol in December, 1949, and turned it over to George Cornett, a police officer and ballistics expert. One of the bullets taken from the body of the deceased was examined microscopically by Cornett, and from tests made by him in firing bullets through the barrel of a special 38 Smith & Wesson pistol, and from a microscopic examination made by him of the evidence bullet and the test bullet, he testified that in his opinion the bullet taken from the body of the deceased had been fired from the pistol admittedly owned by the defendant on the night of the homicide. There was also testimony by Cornett that, in order for the special 38 Smith & Wesson revolver to chamber cartridges like those from which the evidence bullet was fired, it would be necessary to file down the cartridge; that, after the arrest of the defendant, a file was found in the home of the latter, and Cornett testified that he examined the file and found upon microscopic examination brass filings on the file, and that the brass taken from the file was similar to the brass taken from a pistol cartridge, but he could not say whether the brass on the file actually came from a pistol cartridge. There was also testimony of several witnesses that, covering a period of many months prior to October 31, 1948, they had seen the defendant filing cartridges at his home.

Boiling these facts and circumstances down, in so far as they connected the defendant with the homicide, they authorized the jury to find that on the night of the killing the defendant owned the pistol from which the bullets were fired that killed the deceased.

We now advert to the circumstances or lack of circumstances from which a reasonable conclusion could be drawn that the defendant was not the perpetrator of the crime. The only evidence in the record as to a description of the person who did the killing is that of the lady witness, who testified that he was a Negro man, and she, who heard his voice and saw him, made no attempt to say that he resembled the defendant in any manner. Nor is there any evidence that the defendant was seen in the vicinity of the killing either immediately before or after the

killing. There was a total lack of evidence as to whether other men were or were not in the immediate vicinity at the time of the killing. There were no facts or circumstances proven which made it impossible for some other person than the defendant to have had possession of the 38 special Smith & Wesson pistol. Though the expert witness testified that the same gun fired the test and evidence bullets, and that he could not be mistaken in his opinion, he further testified: "I have never been mistaken to my knowledge. I don't know of ever being mistaken. It is possible that I can be, but not of my knowledge"; and this testimony leaves the possibility that the evidence bullet could have been fired from a pistol other than that of the defendant.

Counsel for the State in his argument before this court stated that the defendant admitted the killing. This statement no doubt was predicated on the evidence of Sheriff Potts, that the defendant, before making the written statement of December 20, 1949 said, "He wanted to plead guilty to killing that man." The sheriff asked him "To write it out and tell me what happened and give it to me."

To determine what the defendant meant, we have to consider the conversation between the defendant and the sheriff along with and as a part of the written statements (*Long* v. *State*, 22 *Ga.* 40); and when so read, it is evident that the defendant neither confessed nor admitted that he killed Stevens. The two written statements he made contained not one word of his presence and participation in the killing. In his statement to the jury, he said: "I am going to ask mercy from the court. I said I would plead guilty to save my life. Let me go home and raise my kids. Looks like it is all on account of my taking that gun in pawn." This statement illustrates what was in the defendant's mind when he told the sheriff that he wanted to plead guilty, and does not warrant the conclusion that he wanted to admit his guilt as to the actual killing, but to plead guilty to save his life.

In order to determine whether or not the facts and circumstances of this case were sufficient to authorize the jury to find that the defendant was the person who committed the homicide, we have read and reviewed practically every previous decision of this court where convictions of a capital offense upon cir-

cumstantial evidence were affirmed or reversed. The nearest case upon its facts to the case at bar is *Patton* v. *State*, 117 *Ga.* 230 (43 S. E. 533). There the defendant's conviction of murder was reversed for insufficiency of the evidence to identify him as the person who did the killing. The State there produced one eyewitness to the killing, and he testified that on the night of the killing he was with the deceased and others on a 'possum hunt. While on the hunt, they were accosted by two or three men, and one of the men called out to the witness's party, and after the witness and the deceased had made a few, steps they were met with a volley of shots, one of which killed the deceased. This eyewitness said that one member of the party spoke before the shooting, and he identified the voice as that of the defendant. He also testified that the defendant was carrying a Winchester rifle at the time of the shooting. Several empty shells, which fitted the Winchester rifle owned by the defendant, were found at the place of the shooting, and the next day the chamber of that rifle, which had been handled by several parties, was short of being full about the number of shells that were found at the place of the killing. In holding that the identification of the accused had not been established beyond a reasonable doubt, and speaking of the facts and circumstances as to the ownership of the rifle by the defendant, and as to the shells that were found at the place of the killing, the court said:

"The mere finding of the shells which would fit the Winchester rifle would not necessarily connect him with the offense; or even if it was shown that the shells had come from Patton's rifle, the shot might have been fired by some one else. It did not appear that there were no other Winchester rifles in the neighborhood, nor that other persons did not use cartridges of the same make, size, and number. This was a circumstance which would have gone very far to confirm the defendant's guilt if there had been other sufficient evidence to connect him with the killing; but by itself the mere finding of empty shells which will fit a particular pistol or rifle proves nothing, because the shells might fit half a dozen rifles in a neighborhood. It would have been as proper on that evidence to indict the owner of one rifle as another." P. 232. As to the identity of the person who did

the killing, the facts and circumstances in that case were stronger than those in this case.

In *Graham* v. *State*, 183 *Ga.* 881 (189 S. E. 910), the conviction was reversed because the circumstances were so inconclusive as not to exclude every reasonable hypothesis save that of the guilt of the defendant. In that case, the defendant was charged with the murder of his wife by shooting her with a gun. The defendant's wife was found dead in bed at her home. It appeared that she had been killed by a shotgun wound. A single-barrel 12-gauge shotgun was found resting against the bed, and an empty shell was in the gun. No one was in the house at the time of the killing except the deceased and the defendant. There was some evidence that the defendant and his wife did not get along well together. There were some facts and circumstances that indicated the possibility of suicide.

In our opinion, the proven facts in this case did not exclude every other reasonable hypothesis save that of the guilt of the accused, and the court erred in overruling the motion for a new trial.       *Judgment reversed.   All the Justices concur.*