## 37187. BLANCHARD v. THE STATE.

Undercofler, Justice.

Hoyt Douglas Blanchard, Jr., was convicted in Whitfield County for the murder of Monroe Bishop, and was sentenced to life imprisonment. He appeals. We affirm.

Blanchard formerly was married to Bishop's daughter. On the day of his release from the mental ward of the local hospital, Blanchard went to Bishop's Fruit Stand, where Bishop and his son, Kenneth, were working on a tire while they were engaged in a conversation with Sherman Fowler. Kenneth Bishop saw Blanchard drive up, and told his father of Blanchard's arrival. While Kenneth Bishop continued to work on the tire and continued his conversation with Sherman Fowler, Monroe Bishop walked toward Blanchard.

Kenneth heard a bang, looked up, and saw his father grab his side and fall to the ground. He saw Blanchard placing a pistol into a holster. Fowler called an ambulance while Kenneth knelt by his father.

Investigator Claude Nix of the Whitfield County Sheriff's Department arrived to investigate the shooting. He observed the body of Monroe Bishop lying in the parking lot. When Nix asked Blanchard if he had witnessed the shooting, Blanchard replied, "I done the shooting." Nix then took Blanchard into custody, read him his rights, and transported him to jail.

Investigator Ricky Swiney photographed the scene and removed a .38 caliber pistol in a holster from the glove compartment of Blanchard's vehicle. The revolver contained five rounds of live ammunition and one empty cartridge casing.

Dr. James Metcalfe, a pathologist, performed the autopsy on Monroe Bishop's body. He determined that one bullet had entered the body in the left upper abdomen, severing major arteries. He testified that the cause of death was a gunshot wound to the abdomen.

State Firearms Examiner Kelly Fite determined from tests that the .38 special round recovered from the body of Monroe Bishop was fired from the revolver recovered by Investigator Swiney from the glove compartment of Blanchard's vehicle.

After being read his rights and signing a waiver form, Blanchard stated that he had gone to Bishop's Fruit Stand to shoot Monroe Bishop because he didn't want Bishop messing around with Blanchard's little girl. The statement was admitted in evidence after a Jackson-Denno hearing. Blanchard's former wife and his children lived with Monroe Bishop.

The foregoing evidence supports the jury's verdict under the current legal standard. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. A violation of the rule of sequestration is the basis for the first two enumerations of error. Code Ann. § 38-1703. Blanchard's former wife, Shirley, who is the daughter of Monroe Bishop, the deceased, had been subpoenaed by the State but had not been called to the witness stand in behalf of the State. She had remained in the courtroom throughout the trial after invocation of the rule of sequestration and despite the fact she had heard the court instruct the witnesses to leave the courtroom. When the State called her to the stand as a rebuttal witness, Blanchard first objected to the admissibility of her testimony, then moved for a mistrial because her testimony had been admitted.

We recently have held that a defense witness who has violated

the rule of sequestration in a criminal case shall not be prevented from testifying. *Jordan v. State,* 247 Ga. 328 (276 SE2d 224) (1981). We now extend that rule to witnesses for the prosecution. In criminal cases, the violation of the rule of sequestration by *any* witness either for the defense or for the prosecution goes to the credibility rather than to the admissibility of the witness' testimony. *Jordan v. State,* supra; *Wright v. State,* 246 Ga. 53 (1) (268 SE2d 645) (1980). The first and second enumerations of error are without merit.

2. Blanchard objected to the State's comment during opening statement, and the State's question on direct examination, regarding whether the deceased, Monroe Bishop, was supporting Blanchard's wife and children. He contends that this impermissibly placed his character in evidence. Code Ann. § 38-202. The question to the witness never was answered; rather, after the objection, the State proceeded to the next question.

The evidence against Blanchard was overwhelming. The State contends that the reference to who was supporting whom simply was background information to enable the jury to understand the relationships between the accused, the deceased, and some of the witnesses. Assuming, without deciding, that the trial court should have sustained Blanchard's objections to the matter of financial support being placed before the jury, we conclude that it is highly probable that the remark during the State's opening statement and the unanswered question did not contribute to the judgment of conviction in this case. *Hamilton v. State,* 239 Ga. 72, 76 (235 SE2d 515) (1977); *Lingerfelt v. State,* 238 Ga. 355, 359 (4) (233 SE2d 356) (1977); *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976). The third and fourth enumerations of error are without merit.

3. Blanchard next contends that the statements he made to the investigating officers were given involuntarily due to his mental illness and his being under the influence of drugs.

The court conducted a Jackson-Denno hearing. Blood and urine tests conducted on samples obtained from Blanchard before Blanchard was questioned by the officers revealed phencyclidine, and possibly barbiturates, in Blanchard's blood. The officers knew Blanchard had been discharged that day from the mental ward of the local hospital. Dr. Svoren, a psychiatrist, testified in behalf of Blanchard that Blanchard's perception of reality was impaired on the day of the homicide and of the investigative questioning, and that a reasonable doubt existed as to whether Blanchard could have made a knowing and intelligent waiver of his right to remain silent and his right to counsel. Blanchard contends that this expert testimony stands unrebutted. However, the State points out that Dr. Svoren also testified that Blanchard would have been able to understand,

talk with and answer the questions of the investigating officers; that Blanchard would understand the words "You have the right to remain silent," but that Blanchard "was in such a state of mind that nothing mattered." Dr. Svoren further testified that Blanchard later was able to recall his interview with the officers, was aware that he had killed Monroe Bishop, and knew his reason for doing it.

Detective Swiney testified that Blanchard understood his Miranda rights; that Blanchard was in a quiet mood and did not appear intoxicated at the time he was interviewed three hours later.

Although there was evidence that Blanchard had taken drugs, there also was evidence sufficient to support a finding that his statements were the product of a rational intellect and a free will. The "coherency test" was not violated. *Allen v. State,* 231 Ga. 17, 18 (2) (200 SE2d 106) (1973). A mere showing that Blanchard was suffering from some mental disability was not a sufficient basis upon which to exclude his statements. *Corn v. State,* 240 Ga. 130, 134 (3) (240 SE2d 694) (1977). "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal." *Gates v. State,* 244 Ga. 587, 590 (261 SE2d 349) (1979). The fifth enumeration of error lacks merit.

4. In his sixth and seventh enumerations of error, Blanchard complains, respectively, of the denial of his motion for continuance, and the admission in evidence of testimony relating to portions of his statement, on the ground that the State failed to furnish him with a copy of the entire statement within ten days before trial.

On June 5, 1980, Blanchard filed a motion for discovery seeking, inter alia, copies of any statement given by him while in police custody. Code Ann. § 27-1302. The State responded to the discovery motion on June 13, 1980, by filing a copy of its entire case file with the clerk of court, and by handing to defense counsel a copy of its entire file, minus the fifth or last page of the five-page transcript of Blanchard's statement as filed with the clerk.

On the first day of trial, June 23, 1980, Blanchard moved for a continuance on the ground that the State had not complied with Code Ann. § 27-1302. Defense counsel contended that "the statement — just cuts off. There is no logical conclusion to it." The court noted that the copy of the statement filed with the clerk had five pages. Defense counsel responded: "We only have four pages, Your Honor, and the fourth one ends with Nix saying 'What did Kenneth do?' "

The court reminded defense counsel that he had had the obviously incomplete copy for ten days since the State had served him; that defense counsel had realized the statement was incomplete; and that the complete original of the statement was filed in the clerk's

office. The court denied the motion but directed the district attorney to give defense counsel a copy of the fifth page.

When the issue again arose near the end of the Jackson-Denno hearing, the court reiterated its earlier ruling, adding that no showing of prejudice arising from the inadvertent omission of the last page had been made.

Blanchard contends that the trial court should have continued the case for a period of time sufficient to enable the State to comply with the discovery statute or should have excluded his statement from evidence. He contends that the doctrine of harmless error cannot apply; instead, that the error is presumed harmful.

In the instance of an oral statement, the gist of the discovery statute (Code Ann. § 27-1302) is as follows: The incriminating or inculpatory portions of a defendant's oral, in-custody statement shall be furnished to the defendant in writing at least ten days prior to trial if the defendant has made a written request for a copy of his statement within a "reasonable period of time prior to trial." The reasonable time to which the section refers obviously must precede the period of ten days prior to trial. What is a reasonable time for the request must be determined by considering the facts and circumstances of each case. The finding of the trial court as to what constitutes a reasonable time in a particular case will not be reversed by this court unless "clearly erroneous." Any incriminating or inculpatory portion of the statement not so furnished to the defendant cannot be used by the State during its case in chief or rebuttal; or used by the State to impeach the defendant or any defense witness.

We find no error in the present case. The State's intentions to provide "defense counsel with full disclosure of the State's case file, excluding lawyers' work product," were formally declared in a writing filed with the clerk. Copies of the State's file were served on the defendant and filed with the clerk. No contention was made that the omission of the fifth page of the statement from the copy furnished to the defendant was other than inadvertent, and the trial court so found. The omission was obvious to everyone, including defense counsel, and the omitted page was available for inspection in the clerk's office. None of the omitted portions of the statement were referred to during the officer's testimony concerning the statement or otherwise brought to the jury's attention during the trial. The sixth and seventh enumerations of error are without merit.

5. In his eighth enumeration of error, Blanchard contends that the court erred by refusing to grant him funds to obtain the assistance of an independent psychiatrist. Blanchard did not file a special plea of insanity. Nonetheless, he was evaluated pursuant to court order by

Dr. R. M. Hirani and his staff at Central State Hospital. This evaluation revealed he suffered from a schizophrenic or psychotic disorder and from drug abuse, but that he knew right from wrong and was competent to stand trial. At the request of defense counsel, Blanchard was examined by Dr. Velimir Svoren, a psychiatrist, at North Georgia Mental Health Center. Blanchard called Dr. Svoren as a witness in his behalf on his defense of not guilty by reason of insanity. Dr. Svoren also testified during the Jackson-Denno hearing. His testimony did not tend to establish Blanchard's incompetency to stand trial. *Strickland v. State,* 247 Ga. 219 (275 SE2d 29) (1981).

In the absence of a special plea of insanity, the court had no duty to grant Blanchard a psychiatric evaluation. *Jones v. State,* 246 Ga. 109 (4) (269 SE2d 6) (1980). Further, "We find no abuse of discretion in denying him another psychiatrist." *Leggett v. State,* 244 Ga. 226 (259 SE2d 476) (1979). The testimony concerning Blanchard's mental condition did not in effect raise an issue of incompetency to stand trial. *Lewis v. State,* 239 Ga. 732 (238 SE2d 892) (1977). Blanchard was afforded "adequate procedures to determine his competence." Chenault v. Stynchcombe, 546 F2d 1191, 1192 (5th Cir. 1977). The eighth enumeration of error is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 8, 1981.

*Dean B. Donehoo, Robert B. Adams, Rickie L. Brown,* for appellant.

*Stephen A. Williams, District Attorney, Arthur K. Bolton, Attorney General, Charles E. Brown, Assistant Attorney General,* for appellee.