A04A0256. HUNT v. THE STATE.
(602 SE2d 312)

JOHNSON, Presiding Judge.

Following the denial of his motion for new trial, Thomas Matthew Hunt appeals his convictions of aggravated child molestation, burglary, and child molestation. We find no reversible error and affirm Hunt's convictions.

An indictment was returned charging Hunt with (1) aggravated child molestation of "Cs. D." between August 1, 1998, and September 30, 1999, by performing an act of sodomy involving Hunt's penis and the child's anus, (2) burglary between August 1, 1998, and September 30, 1999, by entering the dwelling of Cs. D.'s mother with the intent to commit the felony of child molestation, and (3) child molestation of "Cy. D." on and about May 8, 1999, by touching and fondling the child's genital area.

At the time of trial in November 2001, Cs. was eleven years old and Cy. was nine years old. Their mother had divorced their father in 1993 and began dating Hunt in August 1995. At times, she allowed

---

Hunt to be alone with her children. In May 1999, Cy. and Hunt spent the afternoon alone together. Cy. was upset when he returned home, and he remained upset. The following week, he revealed to his mother that while Hunt was driving his truck he had reached over and touched and fondled Cy.'s genital area.

Cy.'s mother abruptly ended her relationship with Hunt, and she took Cy. for psychological counseling. She later reported the incident to Detective Rick Whitaker of the Cobb County Police Department. Whitaker interviewed both Cy. and Cs. Cy. repeated the charges against Hunt. Cs. said that Hunt had not done anything to him. Whitaker, however, felt as though Cs. was holding something back, and he referred Cs. to psychologist Denise Houston at a children's advocacy center known as Safepath for more extended forensic interviews. During the interview process, Cs. was examined by a pediatrician who found that Cs. had a distended anal sphincter muscle consistent with repeated insertion of a foreign object into the child's anus or a history of a chronic medical condition such as constipation. The pediatrician testified that Cs.'s mother had reported no such medical history. When Houston told Cs. that the pediatrician had concerns, Cs. tearfully revealed that Hunt had anally sodomized him when he was in the third grade. Cs. later told his mother that "it" had happened so many times he could not remember. After these disclosures, both boys and their mother participated in extended individual and group therapy sessions at Safepath. Karen Nash, a licensed clinical social worker, was their therapist. During individual therapy sessions, both boys discussed the details of the sexual abuse by Hunt. At trial, they testified consistently with their pretrial accusations against Hunt.

1. Hunt first contends that the trial court violated his Sixth Amendment right to a public trial, by ordering the courtroom closed during the testimony of the victims on motion by the state.

OCGA § 17-8-54 pertinently provides:

> In the trial of any criminal case, when any person under the age of 16 is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, and court reporters.

As recognized in *Martin v. State*,[1] the purpose of OCGA § 17-8-54 is to protect the interest of the child witness. Therefore, *Martin* held that

---

[1] 205 Ga. App. 591, 593 (5) (422 SE2d 876) (1992).

a trial court's failure to exercise its statutory authority to clear the courtroom does not violate any statutory rights of the defendant.

Before Cy. testified, the trial court announced its intent to remove about seven spectators from the courtroom during the child's testimony if there were no objections; otherwise, the court stated that it would rule on the objections. Defense counsel stated that he had no objections, and the courtroom was cleared of all spectators, including members of Hunt's immediate family. Again without objection, the court employed the same procedure before Cs. testified.

Hunt argues that in closing the courtroom during the victims' testimony, the trial court did not comply with the decision of the United States Supreme Court in *Waller v. Georgia*.[2] In reliance on the decision of the Eleventh Circuit Federal Court of Appeals in *Judd v. Haley*,[3] Hunt argues that the ensuing deprivation of his Sixth Amendment right to a public trial constituted a structural defect obviating the requirement that he show prejudice.

> The Sixth Amendment to the United States Constitution states (in part): "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." Perhaps the most definitive statement the United States Supreme Court has issued on the scope of one's right to a public trial came in the 1984 case of *Waller v. Georgia*.[4]

> In *Waller*, the Court held that the defendants' Sixth Amendment rights had been violated when the trial court granted the state's motion to close the hearing on the defendants' motion to suppress and barred spectators.

> The Court then articulated the steps that must be taken if a courtroom is to be completely cleared of spectators: "The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." [Cit.][5]

> "[A] violation of one's right to a public trial is structural error. [Cits.] Structural error is a 'defect affecting the framework within

---

[2] 467 U. S. 39 (104 SC 2210, 81 LE2d 31) (1984).

[3] 250 F3d 1308 (11th Cir. 2001).

[4] *Judd*, supra at 1314.

[5] Id.

which the trial proceeds, rather than simply an error in the trial process itself.' [Cit.] As such, structural errors are not subject to harmless error analysis. [Cit.]"[6]

There is, however,

> a distinction between total closures of proceedings, as in *Waller*, and situations where the courtroom is only partially closed to spectators. [Cit.] When access to the courtroom is retained by some spectators (such as representatives of the press or the defendant's family members), we have found that the impact of the closure is not as great, and not as deserving of such a rigorous level of constitutional scrutiny. [Cits.][7]

OCGA § 17-8-54 provides for only a partial closure of a criminal trial based upon a legislative determination that there is a compelling state interest in protecting children while they are testifying concerning a sex offense.[8] This distinguishes *Waller*.[9]

Hunt complains, however, that the trial court did effect a total closure of the courtroom by ordering the removal of all spectators, including his immediate family. That complaint was waived by defense counsel's failure to object to the closure at trial.[10] Had there been such an objection, the trial court would have had an opportunity either to allow Hunt's immediate family and any press members to remain in the courtroom or to engage in the four-part *Waller* inquiry.

2. Hunt contends that the trial court abused its discretion in failing to grant a mistrial after state's expert witness, Karen Nash, testified to the ultimate issue.

On direct examination, Nash described Cs.'s fear and anxiety when he talked about Hunt's sexual abuse of him. The prosecuting attorney asked Nash whether Cs.'s behavior was consistent with that of a child who had been coached or told what to say. Nash responded no and then described certain behaviors generally exhibited by children who are not being truthful. In contrast, Nash then referred to "[Cs.] and . . . other children who have been abused." At that point, defense counsel moved for a mistrial on the ground that Nash had improperly expressed an opinion as to the ultimate issue to be decided by the jury. The trial court refused to declare a mistrial but instructed

---

[6] Id. at 1314-1315.

[7] Id. at 1315.

[8] See *Clements v. Florida*, 742 S2d 338, 341 (Fla. App. 1999).

[9] See id. at 341-342.

[10] *Garren v. State*, 220 Ga. App. 66, 67 (3) (467 SE2d 365) (1996); see *Henderson v. State*, 207 Ga. 206, 212-214 (2) (60 SE2d 345) (1950); *Donaldson v. State*, 255 Ga. App. 451, 452 (3) (565 SE2d 486) (2002).

the jury that no witness could answer the ultimate issue of the defendant's guilt and that the jury should disregard any opinion expressed by a witness on the ultimate issue of guilt.

Although there is nothing wrong with bolstering the credibility of the indicted allegations of sexual abuse with expert opinion testimony (e.g., that the victim's physical examination showed injury consistent with sexual abuse or that the victim's psychological evaluation was consistent with sexual abuse), Georgia law forbids expert opinion testimony that directly bolsters the victim's credibility (i.e., that the victim is telling the truth) or that implicitly goes to the ultimate issue to be decided by the jury, when such issue (i.e., that the victim was sexually abused) is not beyond the ken of the average juror.[11]

Consequently, it would have been improper for Nash to intimate her opinion to the jury that Cs. had been abused. And Nash's response to the prosecutor's question was subject to that interpretation. But

> [t]he grant or denial of a motion for mistrial lies within the sound discretion of the trial court, and this discretion will not be disturbed unless manifestly abused. [Cits.] Unless it is obvious that a mistrial is essential to the preservation of the right to a fair trial, appellate courts will not interfere with the exercise of the court's discretion. [Cit.][12]

Here, the trial court promptly gave a curative instruction directing the jury to disregard the witness's unresponsive answer to the prosecutor's question, to the extent that the witness had improperly expressed her opinion on the ultimate issue of whether Cs. had been abused by Hunt. We find no abuse of discretion.[13]

3. Hunt contends that the trial court violated his Sixth Amendment right to compulsory process by refusing to release all of Houston's session notes from her examination of Cs.

Prior to trial, Hunt filed a motion for a release or in camera inspection of "medical/psychological records." Among other things, Hunt requested any and all records, reports, session notes, and evaluations from Safepath with regard to sessions with either alleged victim. Hunt also issued subpoenas for the production of such documents to Safepath employees Karen Nash and Jinger Robins. Safepath filed a motion to quash the subpoenas arguing, among other

---

[11] *Odom v. State*, 243 Ga. App. 227-228 (1) (531 SE2d 207) (2000).
[12] *Castro v. State*, 241 Ga. App. 546, 549 (2) (527 SE2d 12) (1999).
[13] See id.; see also *Odom*, supra at 230-231 (1) (d).

things, that the materials sought constituted privileged communications between licensed social workers or licensed professional counselors and patients under OCGA § 24-9-21 (7) and (8).

Our Supreme Court, however, held in *Bobo v. State*[14] that a criminal defendant has a constitutional right of access to those parts of privileged communications that are necessary to presentation of his defense.[15]

At the beginning of the trial, defense counsel informed the court that the subpoenaed records were being sought because the defense was challenging techniques employed by Safepath personnel in interviewing and questioning the children. The court ordered the requested documents produced for an in camera examination. Later in the trial, the court provided Hunt with a 12-page packet of material from the documents it had inspected.

On appeal, Hunt acknowledges that this packet (which is not part of the appellate record) included redacted notes of sessions between Houston and Cs. Hunt's complaint, on motion for new trial and on appeal, is that he should have been given the unredacted notes because Houston did not become a licensed clinical social worker until after these sessions were conducted.[16] Hunt, therefore, argues that the communications between Houston and Cs. were not privileged.

Houston's session notes were, however, requested by the defense motion for release of medical or psychological records. Hunt thus identified Houston's session notes as privileged. Consequently, he cannot complain that in ruling on his motion for release of these notes, the trial court erred in treating them as privileged.

4. Hunt contends that the trial court erred in failing to sustain his special demurrer to the indictment.

In his demurrer, Hunt complained that Counts 1 and 2 of the indictment neither alleged a specific date on which the offenses were committed nor stated that the exact date was unknown to the state. "Generally, an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer."[17] Hunt's demurrer was not timely, as it was not filed until after arraignment and no extension of time was

---

[14] 256 Ga. 357 (349 SE2d 690) (1986).

[15] Id. at 358-360 (3), (4).

[16] See *White v. State*, 180 Ga. App. 185, 186 (4) (348 SE2d 728) (1986). In denying Hunt's motion for new trial, the trial court ruled that the privilege remained intact even if Houston was not licensed. The court based this conclusion on the rule that the privilege is not waived by the presence of a third party who is a necessary or customary participant in the consultation and treatment. *Bobo*, supra, 256 Ga. at 358 (2). But in the sessions with Cs., Houston was the therapist and not a third party.

[17] (Footnote omitted.) *State v. Gamblin*, 251 Ga. App. 283 (1) (553 SE2d 866) (2001).

obtained from the judge.[18] Moreover, "we have recognized an exception to the rule that an indictment must allege a specific date where the evidence does not permit the state to identify a single date on which the offense occurred, so the indictment instead may allege that the offense occurred between two particular dates."[19] In this case, it appears from the evidence that the exact dates were unknown.[20]

5. Hunt contends that the trial court erred by overruling an objection by defense counsel to a remark by the prosecuting attorney during her concluding argument. While we agree that the complained-of statement by the prosecutor was improper, we find that Hunt's appellate arguments challenging the alleged error were not preserved for our review by proper objection in the trial court, and even if they were properly before us, the alleged error was harmless.

During her closing argument, the prosecutor said to the jury: "For you to go back in that jury room and return a verdict of not guilty means you must be prepared to come out and look those boys in the eye and call them liars; because that's what it does." Hunt's counsel raised this objection to the statement: "Your Honor, that's improper." The trial court asked the prosecutor if she had any response, and she responded that she is entitled to tell the jurors their duty in a case. The judge ruled that he would allow the argument, and he reminded the jury that the attorneys' arguments are not evidence. The prosecutor then continued her closing statement to the jury, arguing that since the children said they were molested, the jurors must believe that the children are lying in order to find Hunt not guilty. Hunt made no other objections to the prosecutor's closing argument.

On appeal, Hunt argues that the trial court erred in overruling his objection to the prosecutor's statement for two reasons. First, he claims that the statement was improper because it was not an inference that could be drawn from the evidence. Second, he contends that the statement wrongly invited the jurors to depart from their neutrality and decide the case based on personal bias or fear rather than on the evidence. These specific points, however, were not preserved for appellate review by the objection that Hunt's counsel made at trial.

"If counsel desires to preserve an objection upon a specific point, the objection must be on that specific ground. Otherwise, this court will not consider it."[21] Where an objection is too vague and general to

---

[18] See *Haska v. State*, 240 Ga. App. 527 (1) (523 SE2d 589) (1999); Uniform Superior Court Rule 31.1.

[19] (Footnote omitted.) *Gamblin*, supra.

[20] See *State v. Stamey*, 211 Ga. App. 837, 838 (1) (440 SE2d 725) (1994).

[21] (Citations and punctuation omitted.) *Williams v. State*, 191 Ga. App. 217, 218 (2) (381 SE2d 399) (1989).

present any question for determination by the trial court, the over-ruling of such an objection does not constitute reversible error.[22]

At trial Hunt's attorney asserted no specific grounds in support of his objection to the prosecutor's argument. Instead, the sole basis for his objection was that the argument was improper. This objection was so vague and general that it did not present any precise question for determination by the trial court, and certainly did not ask the trial court to rule on the two specific grounds now asserted on appeal. Since those grounds were not properly raised in the trial court, they were waived and we cannot consider them for the first time on appeal.[23]

Moreover, even if Hunt's specific claims were properly before us, the trial court's failure to correct that prosecutor's improper argument is not a reversible error. We agree with the dissent that it was inappropriate for the prosecutor to tell the jurors that if they return a not guilty verdict then they must be prepared to look the boys in the eye and call them liars. The statement could be construed as improperly suggesting to the jurors that they go beyond their role of reaching a verdict based solely on the law and the evidence,[24] and that they instead consider a matter not in evidence — i.e., a consequence of a particular verdict that would be personal to the members of the jury. What the law forbids is the introduction of facts, by way of argument, that are not in the record and are calculated to prejudice a party.[25]

While the language used by the prosecutor went too far, it is important to note that the point of her statement was an appropriate subject for closing argument, during which an attorney has considerable latitude in imagery and illustration.[26] That is, her argument, as well as Hunt's own closing argument, focused on the credibility of the child victims. It is, of course, the role of the jury to evaluate the credibility of witnesses and resolve conflicts in the evidence.[27] And it was entirely appropriate for the prosecutor, given the wide latitude of a closing statement, to argue to the jurors — as she did more artfully after the court denied Hunt's objection — that in order to reach a guilty verdict they must disbelieve the victims' claims.

Even though that is a perfectly legitimate argument about witness credibility, the prosecutor initially made the argument in an unacceptable way and the trial court erred in failing to correct it. Nevertheless, the error did not result in a miscarriage of justice

---

[22] *Yelverton v. State*, 199 Ga. App. 41, 43 (2) (403 SE2d 816) (1991).

[23] See *Bryant v. State*, 182 Ga. App. 609, 610 (1) (356 SE2d 698) (1987).

[24] See OCGA § 17-9-2.

[25] *Savage v. State*, 264 Ga. App. 709, 711 (2) (592 SE2d 188) (2003).

[26] *Jordan v. State*, 172 Ga. App. 496, 498 (2) (323 SE2d 657) (1984).

[27] *DeLoach v. State*, 272 Ga. 890, 891 (1) (536 SE2d 153) (2000).

mandating a reversal of Hunt's conviction. In determining whether an uncorrected argument of counsel resulted in a miscarriage of justice, we use the "highly probable test"; that is, we must decide whether or not it is highly probable that the error contributed to the judgment.[28]

In the instant case, it is not highly probable the trial court's failure to correct the prosecutor's argument contributed to the judgment. The record reveals that the victims' trial testimony incriminating Hunt was consistent with their pretrial statements, that there was medical evidence corroborating the claims of sexual abuse, and that the judge instructed the jurors that arguments of counsel are not evidence. Under these circumstances, there is no reasonable probability that the prosecutor's statement contributed to the verdict.[29] Because the arguments now made by Hunt were not preserved for appellate review and because the trial court's overruling of Hunt's objection to the statement was not reversible error, this enumeration of error lacks merit.

6. Hunt's final claim of error relates to ineffective assistance of trial counsel. Hunt claims his trial counsel was ineffective because he failed to object to the total closure of the courtroom during the testimony of Cs. and Cy. and because he failed to object to improper questions posed to and responses given by state's witnesses Nash and Houston.

To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense.[30] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[31] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[32]

(a) In this case, Hunt has failed to demonstrate how the failure to object to partial closure of the courtroom when the victims testified resulted in harm.[33] We cannot find that the outcome of the trial would have been different had spectators remained in the courtroom during the victims' testimony.

---

[28] *Parker v. State*, 277 Ga. 439, 442 (2) (588 SE2d 683) (2003).

[29] See *Carr v. State*, 275 Ga. 185, 186 (2) (563 SE2d 850) (2002).

[30] *Fults v. State*, 274 Ga. 82, 83-84 (2) (548 SE2d 315) (2001).

[31] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[32] *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[33] See *Turner v. State*, 245 Ga. App. 294, 297-298 (4) (e) (536 SE2d 814) (2000).

(b) Regarding trial counsel's failure to object to questions posed to and responses given by Nash and Houston, we note that most of the questions and responses were proper, under the rule allowing expert opinion testimony whether the victim's psychological evaluation was consistent with sexual abuse.[34] In one instance, however, Houston was asked how likely it was that Cs. would disclose this kind of sexual abuse to please his mother. Houston responded that it was remotely possible. That line of questioning was improper because it was simply another way for the witness to express her opinion that the victim was telling the truth. However, based on the victims' consistent testimony and the corroborating medical evidence, we find no reasonable probability that Houston's statement contributed to the verdict.[35] Thus, Hunt cannot satisfy the prejudice prong of his ineffective assistance claim.

*Judgment affirmed. Mikell, J., concurs. Smith, C. J., and Blackburn, P. J., concur in the judgment only. Ruffin, P. J., Barnes and Phipps, JJ., dissent.*

PHIPPS, Judge, concurring in part and dissenting in part.

I agree with Divisions 1 through 4 and 6 of the majority opinion but I respectfully disagree with the conclusions reached in Division 5 and, therefore, dissent from the majority's affirmance of Hunt's convictions.

In Division 5, the majority reviews Hunt's claim that the trial court erred by overruling an objection by defense counsel to a remark by the prosecuting attorney during her concluding argument. During concluding argument, the prosecutor stated that if the jurors returned a verdict of not guilty, it meant that they "must be prepared to come out and look those boys in the eye and call them liars. . . ." Defense counsel objected on the ground that such argument was improper. The prosecuting attorney countered that the argument was not improper. The court stated, "I'm going to allow it. You'll remember, ladies and gentlemen, that the arguments are not evidence."

OCGA § 17-8-75, relied on by Hunt, provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to

---

[34] See *Odom,* supra.

[35] See *Carr,* supra.

remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.[36]

The complained-of statement by the prosecutor was improper and, under the circumstances, highly prejudicial. The basic legal duty of the jury is to determine whether the evidence proves the defendant's guilt beyond a reasonable doubt; the jury is not to concern itself with the consequences of its verdict. Under the law, the jury could find that the evidence failed to prove guilt beyond a reasonable doubt without having to "call [the boys] liars." Defense counsel did not make any comment during his closing argument to lead the jury to believe otherwise.[37] The state's comment thus diverted the jury from its duty to decide the case on the evidence in accordance with the law.[38] Consequently, OCGA § 17-8-75 required the trial court to rebuke counsel.[39] Instead, the court found the argument proper and merely qualified its approval of the argument by reminding the jury that argument is not evidence. That reminder did not eliminate the prosecuting attorney's improper statement from the jury's consideration. A new trial is thus required.[40]

I cannot find it highly probable that the improper argument did not contribute to the verdict.[41] This matter became the subject of investigation because of Cy.'s revelation to his mother that Hunt had touched his "privates" while driving down the road. Initially, Cs. denied that anything had happened to him. After extended interviews, Cs. began saying that Hunt had anally and orally sodomized him. The credibility of the children's claims under the circumstances presented became a battle of experts. The only corroborating physical evidence was Cs.'s dilated sphincter muscle, which could have been the result of sexual abuse or a medical condition. In closing argument, defense counsel criticized the investigators and prosecutors for failing to interview Cs.'s primary pediatrician or review his medical records to determine whether any alternative explanations were present; and defense counsel argued there were. In her closing

---

[36] "In order to secure appellate review of a purported violation of OCGA § 17-8-75, it is necessary to object in the trial court to the allegedly prejudicial comment at the time it is made. [Cit.]" *Johnson v. State*, 198 Ga. App. 316, 317 (7) (401 SE2d 331) (1991). Here, Hunt did object. Consequently, his claim that the trial court erred in failing to rebuke counsel has been preserved for appellate review.

[37] Compare *Grant v. State*, 257 Ga. App. 275, 276-277 (2) (570 SE2d 597) (2002).

[38] See *Rivers v. State*, 265 Ga. 694, 697 (6) (461 SE2d 205) (1995).

[39] Id.

[40] *Pullin v. State*, 258 Ga. App. 37, 42 (3) (572 SE2d 722) (2002).

[41] See generally *Smith v. State*, 276 Ga. 263, 265 (2) (577 SE2d 548) (2003); *Blanchard v. State*, 247 Ga. 415, 417 (2) (276 SE2d 593) (1981).

argument, the prosecutor did not respond. Although a rational trier of fact certainly could have found Hunt guilty beyond a reasonable doubt, this was not a case that presented overwhelming evidence or an easy determination that guilt had been proven by the requisite standard. The prosecuting attorney's offending comments were calculated to lead the jury to believe that it had to do something which neither the law nor evidence required in order to acquit the defendant. I cannot find it highly probable that this uncorrected misinformation could not have tipped the balance and led a wavering juror to return a guilty verdict.

I am authorized to state that Presiding Judge Ruffin and Judge Barnes join in this opinion.

DECIDED JULY 16, 2004 — 

*Garland, Samuel & Loeb, Donald F. Samuel, William C. Lea,* for appellant.

*Patrick H. Head, District Attorney, Robert B. Lovett, Amy H. McChesney, Assistant District Attorneys,* for appellee.