**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 21, 2020**

# In the Court of Appeals of Georgia

A19A1706. SPIKES v. THE STATE.

MILLER, Presiding Judge.

Charles James Spikes appeals from his convictions for rape and child molestation, arguing that the trial court erred during trial when it completely closed the courtroom during the victim's testimony without first engaging in an analysis under the Supreme Court of the United States' decision in *Waller v. Georgia*, 467 U. S. 39 (104 SCt 2210, 81 LEd2d 31) (1984). We determine that a *Waller* analysis was necessary in this case because the trial court de facto completely closed the courtroom and that the trial court committed reversible error when it closed the courtroom without making adequate findings to support the closure. Therefore, we must reverse Spikes' convictions and remand for a new trial.

Viewed in the light most favorable to the jury's verdicts,[1] the evidence showed that Spikes and the then thirteen-year-old victim and her family were Spikes' downstairs neighbors. One evening, there was a gathering of adults and teenagers at Spikes' apartment, at which the victim was present. At one point, Spikes and the victim were in the living room watching a movie together. Once the two of them were alone, Spikes grabbed the victim by the arm, took her into the bathroom, locked the door, and turned the lights off. Spikes then made the victim suck his penis and had vaginal sex with her — both of which were against her will — and also ejaculated on the victim's back.

The State indicted Spikes for one count of aggravated sodomy (OCGA § 16-6-2 (a) (2)), one count of rape (OCGA § 16-6-1), four counts of child molestation (OCGA § 16-6-4 (a)), and one count of false imprisonment (OCGA § 16-5-41). The jury convicted Spikes of rape and two of the child molestation counts and acquitted him of the remaining counts of the indictment, and the trial court sentenced Spikes to life imprisonment without the possibility of parole. Spikes then filed a direct appeal.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

On appeal, Spikes' sole claim of error is that the trial court erred when it completely closed the courtroom during the victim's testimony without first engaging in the analysis explicated in *Waller*, supra, and that the trial court's failure in this regard necessitates a new trial. We agree.

*(a) The right to a public trial.*

The Sixth Amendment to the United States Constitution, applicable to the states in relevant part, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" U. S. Const. Amend. VI. The Georgia Constitution also guarantees criminal defendants the right to a public trial. Ga. Const. of 1983, Art. I, Sec. I, Par. XI. Importantly, "Georgia law regarding the public aspect of hearings in criminal cases is more protective of the concept of open courtrooms than federal law. Our state constitution point-blankly states that criminal trials *shall* be public." (Citation and punctuation omitted; emphasis in original.) *Purvis v. State*, 288 Ga. 865, 866 (1) (708 SE2d 283) (2011). Although a defendant's right to a public trial is not unlimited, "[t]he circumstances in which a defendant's Sixth Amendment right may be limited are rare and the balance of interests must be struck with special care." (Citations and punctuation omitted.) *Jackson v. State*, 339 Ga. App. 313, 318 (2) (b) (793 SE2d 201) (2016).

3

Before the trial court can exclude the public from *any stage* of a criminal trial, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

(Punctuation omitted; emphasis supplied.) *Jackson*, supra, 339 Ga. App. at 318 (2) (b) (citing *Presley v. Georgia*, 558 U. S. 209, 214 (130 SCt 721, 175 LEd2d 675) (2010)). We review the trial court's closure of a courtroom for an abuse of discretion. *Mullis v. State*, 292 Ga. App. 218, 221 (6) (664 SE2d 271) (2008). Mindful of this framework, we now turn to whether the trial court committed reversible error.

*(b) The courtroom closure was effectively a total closure.*

Generally, we have characterized courtroom closures as either total or partial. See *Jackson*, supra, 339 Ga. App. at 316 (2) (a); *Hunt v. State*, 268 Ga. App. 568, 571 (1) (602 SE2d 312) (2004). "A partial closure occurs when some members of the public are permitted to attend, while a total courtroom closure involves exclusion of all members of the public." *Jackson*, supra, 339 Ga. App. at 316 (2) (a). In *Jackson*, we recognized that, while the State has a compelling interest in protecting minor victims of sex crimes, a trial court must conduct the *Waller* analysis before ordering

4

a total closure of the courtroom to comply with United States Supreme Court precedent. Id. at 318-320 (2) (b). See *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U. S. 596, 607-609 (B) (IV) (102 SCt 2613, 73 LEd2d 248) (1982) (explaining that, although the State has a compelling interest in safeguarding the physical and psychological well-being of a minor victim, the trial court can determine on a case-by-case basis whether closure is necessary by considering the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives).

In this case, after the State announced the victim as its first witness, the prosecutor "ask[ed] that the courtroom be cleared of anybody" and only requested that the victim's mother be allowed to remain. Spikes' counsel objected, explaining that Spikes' family was present and wished to listen to the entire proceeding. The trial court then stated,

> I feel that the statute requires that I close the courtroom except for non-essential personnel. So that means the court reporter may remain, the bailiff, court security, clerk, prosecutor, client and mother. So friends and family members, you know, we have open courtrooms but I'm required to follow the statute to protect the minor child's privacy.

5

Spikes renewed his objection, arguing that he was entitled to an open trial and explaining that the closure, especially as applied to his family, would violate his Sixth Amendment rights and his state constitutional rights. The trial court proceeded with the courtroom closure as it had previously directed and reopened the courtroom after victim testified.

Unquestionably, the trial court did not engage in a *Waller* analysis before closing the courtroom, and neither the State nor the trial court invoked a specific statute before the closure. Nevertheless, the State argues that the trial court only partially closed the courtroom pursuant to the mandatory closure rule encapsulated in OCGA § 17-8-54 and that the legislature does not require trial courts to make *Waller* findings on the record when acting in accordance with OCGA § 17-8-54. To the extent that a question remains regarding whether a trial court must first engage in a *Waller* analysis before effecting a partial closure under OCGA § 17-8-54,[2] we need not decide that issue today. This is because the closure of the courtroom was not, in actuality, a partial closure in accordance with OCGA § 17-8-54.

---

[2] See, e.g., *Scott v. State*, 306 Ga. 507, 510-516 (832 SE2d 426) (2019) (Peterson, J., concurring).

"OCGA § 17-8-54 provides for only a partial closure of a criminal trial based upon a legislative determination that there is a compelling state interest in protecting children while they are testifying concerning a sex offense." *Hunt*, supra, 268 Ga. App. at 571 (1). The statute reads as follows:

> [i]n the trial of any criminal case, when any person under the age of 16 is testifying concerning any sexual offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, victim assistance coordinators, victims' advocates, and such other victim assistance personnel as provided for by Code Section 15-18-14.2, jurors, newspaper reporters or broadcasters, and court reporters.[3]

OCGA § 17-8-54.

Here, however, the trial court plainly ordered that the only persons who would be allowed to remain in the courtroom were the court reporter, the bailiff, court

---

[3] We note that OCGA § 17-8-53 allows the trial judge discretion to clear the courtroom of "all or any portion of the audience" if the evidence in a trial is "vulgar and obscene or relates to the improper acts of the sexes, and tends to debauch the morals of the young." OCGA § 17-8-53. Given that OCGA § 17-8-53 refers to a trial court's *discretionary* power, and the trial court indicated that it believed it was *required* to clear the courtroom, we will not presume that the trial court relied on OCGA § 17-8-53 when it closed the courtroom. We note, however, that our posture should not be construed as a ruling or suggestion that a trial court need not engage in the *Waller* analysis before closing the courtroom under OCGA § 17-8-53.

7

security, clerk, prosecutor, the victim, and the victim's mother (whose presence the State explicitly requested). The trial court then required any other friends and family members to leave. And even after Spikes' counsel repeatedly explained that Spikes' family members were present in the courtroom, the trial court made no inquiry whatsoever regarding their relation to Spikes, nor did it order that Spikes' immediate family members would be permitted to remain. Compare *Hunt*, supra, 268 Ga. App. at 571 (1) (recognizing that if the defendant had objected, the trial court would have had an opportunity either to allow the defendant's immediate family and any press members to remain in the courtroom or to engage in the four-part *Waller* inquiry); *Chamberlain v. State*, 347 Ga. App. 775, 779-780 (2) (819 SE2d 303) (2018) (after the defense objected to the clearing of the courtroom, the trial court invoked OCGA § 17-8-54, indicated that all persons who did not fall under the statute had to leave during the victim's testimony, and determined that the defendant's sister-in-law was not his "immediate family" under the statute). Thus, the trial court's closure here was not a partial closure that comported with OCGA § 17-8-54. Instead, the courtroom closure in this case is similar to the total closure that was under consideration in *Jackson*, supra, 339 Ga. App. at 317 (a), where we concluded that the courtroom closure was total because the State requested that the courtroom be closed to the

8

defendant's extended family and non-courtroom personnel, and the trial court cleared the courtroom of all persons who were not law enforcement or involved in the court system. In this case, the prosecutor "ask[ed] that the courtroom be cleared of anybody," and the trial court then ordered the courtroom closed to all "non-essential" personnel.

Although the trial court permitted the victim's mother to remain at the State's request, we are wholly unpersuaded that allowing the presence of that single individual obviated the need for case-specific findings. "In giving content to the constitutional and statutory commands that an accused be given a public trial, without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged." (Citation and punctuation omitted.) *Purvis*, supra, 288 Ga. at 867 (1). And "[i]t is the general policy of our law that a trial of a case in court be open and public and *free from secrecy* save the deliberations of the jury." (Emphasis supplied.) *Grant v. Hart*, 197 Ga. 662, 671 (1) (30 SE2d 271) (1944). "There are, moreover, degrees of partial closure, some of which might approach a total closure in practical effect." *Tinsley v. United States*, 868 A2d 867, 874 (II) (D.C. 2005). Indeed, while the victim's mother was permitted to observe the victim's testimony, all of the

defendant's family members were ordered to leave and the record suggests that no other spectators were present. The closure in this case thus implicated the same secrecy concerns as a total closure. See *Whitson v. State*, 791 So2d 544, 546, n.3 (Fla. 1st DCA 2001) (explaining that although the victim's mother and a victim advocate were present during the victim's testimony, "the prohibition against closure of a courtroom without an appropriate inquiry, inures to the benefit of the public at large and the accused, under the First and Sixth Amendments to the United States Constitution," and thus the situation warranted the same analysis as a total closure); *Longus v. State*, 7 A3d 64, 75 (III) (Md. Ct. App. 2010) ("[I]n some cases, members of the defendant's family or friends may be the only spectators, which would make a 'partial' closure under those circumstances a de facto total closure."); *Demouey v. State*, 202 So3d 355, 360-361 (Ala. Crim. App. 2015) (trial court's decision to clear the courtroom of all the defendant's supporters was a de facto total closure of the courtroom, which invokes the *Waller* test). Compare *State v. Rolfe*, 851 NW2d 897, 903 (16) (S.D. 2014) (determining that the closure was partial because the trial court permitted media representatives to remain and therefore the closure did not implicate the same secrecy and fairness concerns as a total closure).

10

The courtroom closure in this case was, effectively, a total closure, which "did not comply with constitutional requirements because the trial court made no findings adequate to support the closure, including a consideration of reasonable alternatives." *Jackson*, supra, 339 Ga. App. at 319 (2) (b). Indeed, the trial court elicited no information before closing the courtroom. Although the trial court cursorily mentioned protecting the minor's privacy, a trial court's findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered." (Citation omitted.) *Goldstein v. State*, 283 Ga. App. 1, 3 (2) (640 SE2d 599) (2006). See *Rockdale Citizen Publishing Co. v. State*, 266 Ga. 92, 94 (1) (463 SE2d 864) (1995) (trial court's conclusory statement that it had considered the alternatives to closure and found them to be insufficient under the circumstances of the case was not specific enough to enable the Court to determine that the closure order was entered properly). Accordingly, the closure here constituted reversible error.

*(c) Spikes is entitled to a new trial.*

Just as in *Jackson*, remand is not available in this case because "the court closed the courtroom during the most critical testimony of the trial itself. There is no way to remedy that error short of a new trial." *Jackson*, supra, 339 Ga. App. at 320 (c). While we are not insensitive to the victim having to testify about the incident

11

again, we are duty-bound to abide by United States Supreme Court precedent, and we must reverse Spikes' convictions.[4] Nevertheless, the evidence was more than sufficient to support his convictions, and double jeopardy does not bar Spikes from being retried. See id.

*Judgment reversed and case remanded. Rickman and Reese, JJ., concur.*

---

[4] In *Sandifer v. State*, 318 Ga. App. 630, 632 (1) (734 SE2d 464) (2012), we determined that the defendant was not harmed by the trial court's decision to remove the defendant's sister from the courtroom while allowing the victims' families to remain. In that case, however, the issue before the Court was not the trial court's failure to perform a *Waller* analysis in furtherance of the defendant's Sixth Amendment public-trial guarantee. See also *Stephens v. State*, 261 Ga. 467, 469-470 (7) (405 SE2d 483) (1991) (declining to view as harmless the trial court's failure to follow the applicable requirements for courtroom closure, including making written findings of fact and conclusions of law).