## A00A0877. ODOM v. THE STATE.
### (531 SE2d 207)

ELDRIDGE, Judge.

Benjamin William Odom appeals from a Richmond County jury's verdict finding him guilty of aggravated sodomy and aggravated child molestation for sexual acts he perpetrated against his three-year-old stepson. Before this Court, Odom raises a type of challenge that has seen some "success" in terms of reversal and, thus, is raised repeatedly on appeal of sexual abuse convictions: Odom challenges the opinion testimony of each of the State's expert witnesses, claiming that — in one form or another — the expert's testimony invaded the province of the jury and improperly bolstered the credibility of the victim.

1. At the onset, there is absolutely nothing wrong with expert opinion testimony that bolsters the credibility of the indicted allegations of sexual abuse, e.g., "the victim's physical examination showed injury consistent with sexual abuse," or "the victim's psychological evaluation was consistent with sexual abuse." Establishing the credibility of the indicted acts of sexual abuse is what the State's case is all about and is the purpose for such expert testimony in the first place; the fact that such testimony may also "indirectly, though nec-

---

essarily, involve[ ] the child's credibility does not render it inadmissible."[1]

What is forbidden is expert opinion testimony that "directly addresses the credibility of the victim," i.e., "I believe the victim; I think the victim is telling the truth," *Barlow v. State*, 270 Ga. 54, 55 (507 SE2d 416) (1998); *Smith v. State*, 259 Ga. 135, 138 (2) (377 SE2d 158) (1989), or expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury, when such issue is not beyond the "ken" of the average juror, i.e., "In my opinion, the victim was sexually abused." *Allison v. State*, 256 Ga. 851 (353 SE2d 805) (1987). Although the distinction may seem fine to a layman, there is a world of legal difference between expert testimony that "in my opinion, the victim's psychological exam was consistent with sexual abuse," and expert testimony that "in my opinion, the victim was sexually abused." Id. In the first situation, the expert leaves the ultimate issue/conclusion for the jury to decide; in the second, the weight of the expert is put behind a factual conclusion which invades the province of the jury by providing a direct answer to the ultimate issue: was the victim sexually abused? See *Knight v. State*, 207 Ga. App. 846 (1) (429 SE2d 326) (1993); *Hall v. State*, 201 Ga. App. 626, 627 (2) (411 SE2d 777) (1991).

Since the State is required to prove its case, expert opinion testimony often becomes necessary, especially in instances of the abuse of very young children, as in this case. And we have seen these "improper opinion testimony" claims of error again and again on appeal, because (1) the inconsistency of appellate consensus over what constitutes improper opinion testimony has made the raising of such claims worth a try in almost every case, regardless of the merits of the claims;[2] and (2) the State's prosecutors ask open-ended questions of their experts that inevitably elicit improper opinion testimony regarding either the ultimate issue or the credibility of the victim. In affirming Odom's conviction, we have an opportunity to review both of these aspects: the utterly meritless claim raised on the chance that it might be taken seriously, and the merited claim of error occurring because of a prosecutor's question that inevitably called for improper opinion testimony.

---

[1] *State v. Butler*, 256 Ga. 448, 450 (2) (349 SE2d 684) (1986); *Pyron v. State*, 237 Ga. App. 198, 200-201 (514 SE2d 51) (1999); *Hicks v. State*, 196 Ga. App. 311, 313 (2) (396 SE2d 60) (1990).

[2] See *Putnam v. State*, 231 Ga. App. 190, 194 (498 SE2d 340) (1998) (Beasley, J., concurring specially); see also *Hilliard v. State*, 226 Ga. App. 478, 481 (487 SE2d 81) (1997); *Flowers v. State*, 220 Ga. App. 814, 815-816 (468 SE2d 199) (1996), overruled on other grounds, *Strickland v. State*, 223 Ga. App. 772 (479 SE2d 125) (1996); *Lagana v. State*, 219 Ga. App. 220, 221 (1) (464 SE2d 625) (1995); compare *Cline v. State*, 224 Ga. App. 235, 237 (2) (480 SE2d 269) (1997); *Knight v. State*, supra at 846; *Moss v. State*, 216 Ga. App. 711, 714 (455 SE2d 411) (1995); *Stamey v. State*, 194 Ga. App. 305, 306 (390 SE2d 409) (1990).

(a) *Dr. Gwendolyn Smith — Psychotherapist/Play Therapist.* Odom claims error in Dr. Smith's foundation testimony that the victim was referred to her for treatment of "[a]lleged child sexual abuse and post traumatic stress disorder." Odom claims that, if Smith did not believe the victim to be sexually abused, she would not be treating the child; so, Smith's foundation testimony improperly bolstered the credibility of the victim. Candidly, this contention shows how farfetched some of these "improper expert testimony" claims can be. Taken to its logical conclusion, no expert (or any witness, for that matter) could testify on behalf of the State, because his or her supporting testimony indicates a belief of the victim that improperly "bolsters" the victim's credibility.

Needless to say, there is no error in testimony that the young victim was initially referred to Smith for treatment of alleged sexual abuse.[3] Smith did not express an opinion regarding the merits of the referral. If the jury wished to infer from Smith's treatment of the victim that such referral had validity, that inference impacted on the credibility of the allegations of abuse; the expert did not "directly address" the credibility of the victim or express a direct opinion that the victim was sexually abused. *Barlow v. State*, supra at 55; *Knight v. State*, supra at 846.

(b) *Dr. Lisa Christenson — Pediatric Emergency Medicine Specialist.* Odom claims error in Dr. Christenson's testimony that, "[B]y what he was able to tell me — what a 3 year old boy was able to describe to me, in my opinion, was knowledge that he should not have had; by his physical exam and by his behavior, it was most consistent with a history of sexual abuse."[4] Odom claims that this testimony was "an affirmative response from the expert that [the victim] has been sexually abuse[d]." No. It was not. Christenson did not testify that the victim had, in fact, been sexually abused. Christenson's testimony was that the victim's physical examination and related behavior were consistent with sexual abuse. As such, Christenson's testimony was a permissible expression of the expert's opinion based on factors beyond the ken of the average juror.[5] The jury was permitted to draw for itself the final conclusion as to whether the victim had, in fact, been sexually abused. *Hall v. State*, supra at 627.

---

[3] Typically in therapy, an expert may have to see the victim for a number of visits prior to being capable of formulating an opinion as to credibility, regardless of the initially stated purpose for the referral.

[4] A physical examination of the three-year-old victim showed that his rectum was dilated, had decreased tone, and had growths of skin around it, all consistent with forceful penetration of the anus. In addition, at the time of the exam, the victim had bruises on his anterior thighs. The victim told Christenson that "Ben fucked me."

[5] *State v. Butler*, supra at 450; *Hawkins v. State*, 236 Ga. App. 346 (512 SE2d 59) (1999); *Randall v. State*, 207 Ga. App. 637, 640 (428 SE2d 616) (1993).

(c) *Investigator Thelma Gilchrist.* Gilchrist testified regarding the circumstances leading to Odom's arrest. She testified that, "I later received a report from the University Hospital, I think it was Dr. Christenson who did the exam on this child. And her impression documented on that report was that the child's physical exam was very consistent with sexual abuse." Pursuant to such investigation, Gilchrist testified that she issued a warrant for Odom's arrest. Odom contends that Gilchrist's testimony was hearsay evidence of an expert's opinion "as to the existence vel non of a fact," i.e., that Christenson believed the victim had been sexually abused. However, the fact that the evidence was hearsay did not render it inadmissible, since it was in furtherance of Gilchrist's investigation leading to the arrest of Odom. OCGA § 24-3-2.[6] In addition, the substance of the hearsay statement was admissible for the reasons addressed in Division 1 (b) above.

(d) *Dr. Robert Blackwood — Psychiatrist.* Dr. Blackwood testified regarding his treatment of the victim for various behavioral disorders the victim began to display. He testified in detail as to how the behavioral disorders manifested themselves at home, at school, and in treatment; he also testified as to the medications the victim was taking to control the disorders, as well as his depression. Following such testimony, the prosecutor asked Blackwood: "Have you been able to attribute a source to the child's problems?" To which question Blackwood replied, inter alia, "this child, in my opinion, had been sexually abused." Odom objected, without moving for mistrial. The trial court sustained the objection and told the jury to disregard that portion of Blackwood's testimony. Defense counsel made no further comments or objections.

Odom contends that Blackwood's testimony was improper opinion testimony that went to the ultimate issue to be decided by the jury. We agree. And the prosecutor's question invited such improper testimony; the question was open-ended and begged for the answer received.[7] As long as such errors are made by prosecutors who will not learn the distinctions discussed supra and thus cannot prepare their experts for such distinctions, "improper opinion testimony" claims — with and without merit — will be raised again and again on appeal of sexual abuse convictions. And reversals (in my view, warranted and unwarranted because of the lack of appellate consensus) will be forthcoming, thereby putting the child/victim through the trauma of retrial.

---

[6] See *Ivester v. State*, 252 Ga. 333, 335-336 (2) (313 SE2d 674) (1984).

[7] As opposed to being framed narrowly as the prosecutor's proper question to Dr. Christenson was framed, e.g., "Can you offer an opinion as to whether the child's problems are or are not consistent with sexual abuse?"

In this case, however, reversal of the jury's verdict is not warranted for the following reasons:

(i) Odom objected to the testimony, and the trial court sustained the objection. The jury was instructed to disregard the testimony, and no further relief was requested. Odom did not move for mistrial. "When an appellant could have tendered a timely motion for mistrial or requested additional limiting or curative instruction but declined to do so, we generally will not grant more appellate relief than that actually prayed for at trial." (Citations and punctuation omitted.) *Smith v. State*, 210 Ga. App. 451 (2) (436 SE2d 562) (1993).[8]

(ii) The trial court directed the jury to disregard Blackwood's offensive testimony, and jurors are presumed to follow the directives of the trial court, in the absence of contrary evidence.[9]

(iii) The evidence against Odom was overwhelming and included two videotapes of the victim identifying Odom, his stepfather, as the perpetrator and describing sexual acts about which a three-year-old should have no knowledge; strong physical evidence of sexual abuse as described in footnote 3, supra; three outcry witnesses who demonstrated the consistency of the victim's outcry, including his identification of Odom as the perpetrator; and testimony from two mental health experts who each offered proper, competent testimony that the victim's outcry and behavior are consistent with that of children who have been sexually abused. We find that Blackwood's sole improper statement was not such a significant addition to the properly admitted evidence of sexual abuse so as to displace the jury's minds on this issue and usurp their authority.[10] Accordingly, it is highly probable that the single instance of improper opinion testimony did not contribute to the verdict, especially since the jury was instructed to disregard the testimony.[11]

2. After the start of deliberations, the jury requested to review the videotaped testimony of the victim. The trial court granted the request, played the tapes in open court, and returned the jury to the jury room to continue deliberating. Odom claims that, although he did not request cautionary instructions, the trial court erred by failing to sua sponte issue a cautionary instruction either prior to or following the jury's review of the tapes.

---

[8] See also *Weems v. State*, 268 Ga. 515, 516 (2) (491 SE2d 325) (1997); *Paz v. State*, 239 Ga. App. 278 (1) (521 SE2d 362) (1999) (failure to renew motion for mistrial after curative instructions presents nothing for review on appeal).

[9] *Smith v. State*, 267 Ga. 372, 374 (3) (477 SE2d 827) (1996); *Garcia v. State*, 207 Ga. App. 653, 658 (428 SE2d 666) (1993). See also *Castro v. State*, 241 Ga. App. 546, 551 (527 SE2d 12) (1999) (Eldridge, J., concurring specially).

[10] *Moss v. State*, supra at 714; *Stamey v. State*, supra at 306.

[11] *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Castro v. State*, supra.

"The rule in this state is that the trial judge, in his discretion, may permit the jury at their request to rehear in the defendant's presence the requested testimony after beginning deliberation. The jury is entitled to designate the testimony which it desires to rehear, in the absence of special circumstances which might work an injustice. While some later cases approve of cautionary instructions they do not demand that they be given so as to require reversal in the event such instructions are not given."[12]

Accordingly, Odom's contention is without merit.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MARCH 15, 2000 —
RECONSIDERATION DENIED MARCH 29, 2000 — 

*Jerry M. Daniel*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[12] (Citation omitted.) *Farrow v. State*, 222 Ga. App. 689, 691 (2) (475 SE2d 706) (1996).