[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12772
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cv-00062-WCO


IRVIN SHAY VIERS,

Petitioner-Appellant,

versus

WARDEN,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 19, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Irvin Viers, a state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  Upon review of the record, and after consideration of the parties' briefs, we affirm.

## I. BACKGROUND

On September 23, 2002, a Georgia jury found Viers guilty of one count of aggravated sexual battery, in violation of O.C.G.A. § 16-6-22.2, and one count of cruelty to children, in violation of O.C.G.A. § 16-5-70.  On December 16, 2002, the state court merged the offenses and sentenced Viers to 20 years' imprisonment. The victim, HV, was the two-year-old daughter of Viers and his codefendant wife, Terena Viers ("Terena").  Terena was convicted of cruelty to children and sentenced to 20 years' imprisonment, with 15 years to serve.

### A.    State's Trial Evidence

The evidence showed that, on May 9, 2001, Viers and Terena brought HV to the emergency room.  HV, then two years and four months old, was bleeding from a five- to six-centimeter laceration on her perineal area, the area between her vagina and anal opening, and had multiple bruises on her trunk and legs. Ultimately, a pediatric surgeon performed corrective surgery on HV's perineum. The surgeon testified that HV's injuries were consistent with abuse, and the damage to her perineum was caused by significant force and could have been caused by repeated penetration with a stick.

2

A forensic pediatrician who examined HV the day after her surgery testified that he observed lacerations in her anus and that her injuries were consistent with sexual abuse and the insertion of a stick into her anus.  The jury additionally heard evidence that Viers gave multiple, inconsistent explanations to the emergency room nurse and law enforcement officers of how HV received her injuries, and that blood matching HV's DNA was found on her car seat.

Dr. Nancy Aldridge, who conducted a forensic evaluation of HV, also testified.[1]  Dr. Aldridge completed her evaluation of HV over the course of six interviews between July 2001 and October 2001, beginning when HV was two years and seven months old.  Dr. Aldridge testified that, in interviewing HV, she was careful not to ask leading or suggestive questions or provide positive reinforcement.  During the interviews, HV indicated that she had "boo-boos" on various parts of her body, demonstrating on anatomically correct dolls that the injuries were on her arms, abdomen, buttocks, and vaginal and genital areas.  HV indicated that the "boo-boos" came from Viers and Terena.

Dr. Aldridge testified that HV also repeatedly changed the dolls' diapers, stating that they had "doo-doo" in their diapers.  More than once, HV struck a doll, and when Dr. Aldridge asked her why, she explained that the doll had soiled its

---

[1]Dr. Aldridge was a registered nurse; had a bachelor's degree in psychology, a master's degree in social work, and a Ph.D. in clinical research; had been in practice as a licensed clinical social worker for almost fifteen years; and had evaluated "many, many" children who had been abused emotionally, psychologically, physically, or sexually.

diaper.  According to Dr. Aldridge, HV obsessively demonstrated "three consistent things": "the roughness with the dolls, . . . the boo-boos and where they came from, and the baby's doo-doo and the striking of the babies and the aggressive play with the baby dolls after that."

In HV's fourth or fifth session with Dr. Aldridge, HV told Dr. Aldridge that her "da-da" (her name for Viers) caused the "boo-boo" in her vaginal area.  When Dr. Aldridge asked HV what her father had used to hurt her, HV replied that he used a stick from the front yard on one occasion and a bat at another time.  HV also pointed to the vaginal area of an anatomically correct doll.  HV indicated that her vaginal injury was inflicted after she had a dirty diaper.

In the course of her testimony, Dr. Aldridge also made five statements to which no contemporaneous objection was raised by Viers's attorney.  Viers later maintained that Dr. Aldridge's statements should have been excluded as improper opinion testimony under Georgia law.  Here are the statements.  First, on cross-examination, Dr. Aldridge was questioned about the report she prepared on the forensic evaluation and asked whether her "conclusion was that . . . the only . . . person [HV] had accused [of hurting her] was her father."  Dr. Aldridge responded, "Yes, sir.  But if you go up another sentence, I had indicated that it was most likely that she was physically abused by her mother and her father."

4

Second, Dr. Aldridge testified that HV could show Dr. Aldridge what "happened to the doll because it happened to [HV]." Third, in in responding to a cross-examination question about whether HV could "just be making up a story about a doll," Dr. Aldridge stated that HV had "definite medical findings," including evidence of trauma to her vaginal and anal area, which was not "just a coincidence." Fourth, when asked about HV's statements that other individuals had hurt her, including an individual named "Ginger" and a cat, Dr. Aldridge testified, "I think this child was so traumatized that she is concerned that it might happen again and that other individuals could hurt her."

Fifth, Dr. Aldridge was asked whether HV's repeatedly associating soiling her diaper with "harm by her parents" could be "consistent with the fact that she was abused." Dr. Aldridge replied, "Yes, sir. . . . It's very consistent when she has been abused, because . . . children usually repeat the core experience that they had. . . . [HV] continued to react to it and act it out, because it's confusing, it's traumatizing to her, and she is trying to figure out what happened to her."

On cross-examination, Dr. Aldridge admitted that she did not videotape her interview sessions with HV; that she referred to HV several times in her report as a "very precious little girl"; and that she picked up HV and carried HV from the waiting room to her office at the beginning of each session. Dr. Aldridge noted, however, that she generally did not hold HV during the sessions. Dr. Aldridge

5

conceded that, before her first session with HV, HV already had been interviewed by several people, including a caseworker and an investigating officer. Finally, although HV's foster family reported that HV had a small vocabulary, Dr. Aldridge found her to have a larger vocabulary than was reported, to be very talkative, and to sometimes speak in full sentences.

Dennis Abercrombie, HV's foster father, testified that HV came to live with his family in June 2001 after about a month with another foster family. At that time, HV was "very frail," had "quit taking solid food," and was losing weight and failing to thrive. HV seemed afraid of men and was tentative around women. She had frequent nightmares and would become hysterical after soiling her diaper. On one occasion, in July or August 2001, while looking at photographs of her family, HV said to Abercrombie, without prompting or questioning, "Daddy hurt my boo-boo," referring to her bottom or back side. On cross-examination, Abercrombie admitted that he and his wife wished to adopt HV if the opportunity arose.

## B.    Defendant's Trial Evidence

At trial, attorney Drew Powell represented Viers. After the State rested, attorney Powell called Dr. James Stark, a psychologist, to testify for the defense.[2]

_____

[2]Dr. Stark had bachelor's and master's degrees in psychology and a Ph.D. in clinical psychology. At the time of trial, he had been practicing full-time as a licensed psychologist in Georgia for thirty years, with specialization in the areas of childhood and adolescence, abuse and neglect, forensic psychology, custody and visitation issues, and the study of allegations of abuse. Since 1966, he had interviewed thousands of children regarding abuse and neglect issues, and he

6

Based on his extensive experience as a certified forensic examiner, Dr. Stark outlined various mistakes by child forensic interviewers that could undermine the accuracy of an evaluation: (1) losing their objectivity; (2) using anatomical dolls, which studies had shown to be problematic; (3) touching or hugging the child, which could positively "reinforce whatever happened just before" the contact; (4) relying on a "little kid['s]" ability to think abstractly, as "very, very young" children tend to think concretely; (5) failing to audiotape or videotape the forensic evaluation, especially in cases of alleged sexual abuse, so that subsequently it can be determined if the evaluator was encouraging certain responses; and (6) evaluating a child over the course of several sessions, or allowing different people to interview the child, as the child can take on questions and comments as real events.

Dr. Spark also specifically criticized various methods of Dr. Aldridge and aspects of her evaluation of HV, including that Dr. Aldridge evaluated HV over the course of six sessions, which could have some "practice effects"; that Dr. Aldridge failed to videotape or audiotape the sessions; and that Dr. Aldridge failed to reconcile some inconsistencies in HV's statements. Based on Dr. Stark's examination of Dr. Aldridge's report, it appeared to Dr. Stark that Dr. Aldridge,

---

was a certified forensic examiner. Dr. Stark was admitted as an expert in the fields of clinical and forensic psychology, particularly related to children, and child sexual abuse and neglect.

7

from the beginning, "assumed" that Viers caused HV's injuries and ignored HV's allegations against other individuals, such as "Ginger" or the cat.  For example, Dr. Aldridge's report did not include any history on HV's first foster family, and it was possible that HV was attempting to communicate "something" that happened with that family.  Dr. Aldridge also showed a lack of objectivity, referring to HV as "precious" and "cute" in her report, and may have positively reinforced HV through holding and hugging her.  Finally, the fact that HV apparently knew only a few words before starting her sessions with Dr. Aldridge, but demonstrated her large vocabulary as the sessions progressed, suggested that someone was teaching her new words.

In closing argument, attorney Powell argued, <u>inter alia</u>, that Dr. Stark's testimony demonstrated the problems with Dr. Aldridge's report and methods, including her bias.

## C.    Motion for a New Trial

On January 2, 2003, with the assistance of new court-appointed counsel, Viers filed a motion for new trial.  In May and June 2008, respectively, Viers's counsel filed two amended motions for new trial.

Viers alleged, <u>inter alia</u>, that trial attorney Powell rendered ineffective assistance of counsel through failing to object to: (1) the improper ultimate-issue "opinion" testimony of Dr. Aldridge, specifically Dr. Aldridge's statement that she

"had indicated that it was most likely that [HV] was physically abused by her mother and her father"; and (2) the improper admission of HV's statements through the hearsay testimony of Dr. Aldridge and foster father Abercrombie.

On June 2, 2008, the state trial court held a hearing on Viers's motion for new trial. As to Viers's first claim of ineffective assistance, attorney Powell testified that he did not object to the above "opinion" statement by Dr. Aldridge because he believed that it was admissible testimony and that an objection would be frivolous.

As to Viers's ineffective assistance claim based on HV's hearsay statements, attorney Powell testified that he did not move to exclude the statements or otherwise object because he believed that the statements were admissible under Georgia's Child Hearsay statute. In particular, Powell believed that the statements had sufficient "indicia of reliability," as required by that statute, to be admitted and that an attempt to exclude the statements would not be successful. Powell "heavily based" this conclusion on the Child Hearsay statute and "the fact that there's not much case law out there where the statements are thrown out because of indicia of reliability. There are a few. But it seems to be a fairly rare experience."

In addition, attorney Powell testified that he developed a strategy of attacking the statements directly to the jury through Dr. Stark's testimony and his closing argument. Powell decided to highlight to the jury that HV was "so young"

9

and that it took "repeated" sessions with Dr. Aldridge before she identified Viers as the cause of the "boo-boo" in her vaginal area.

On July 22, 2008, the state trial court summarily denied Viers's counseled motions for new trial. On August 19, 2008, Viers's counsel filed a notice of appeal. On March 26, 2009, after granting Viers's motion to proceed pro se on appeal, the state trial court again denied Viers's motion for new trial, stating that its denial would facilitate Viers's right of review on appeal and establish a proper record.

Also on March 26, 2009, Viers filed pro se a "Brief in Support of Amended Motion for New Trial." Subsequently, Viers filed a motion for reconsideration in light of his pro se brief. Viers pro se reiterated the ineffective assistance claims already raised in his counseled motion-for-new-trial proceedings but also expanded on the claim that Powell rendered ineffective assistance in failing to object to improper opinion testimony of Dr. Aldridge. Viers listed all five of the statements identified above as objectionable.[3]

The state trial court denied Viers's motion for reconsideration, and Viers filed an amended notice of appeal.

---

[3]See discussion supra Part I.A.

10

## D.    Direct Appeal to the Georgia Court of Appeals

Proceeding pro se on appeal, Viers raised the two ineffective assistance claims litigated before the state trial court.[4]  As to the issues concerning Dr. Aldridge's allegedly improper opinion testimony, Viers asserted ineffective assistance based on all five of the supposedly objectionable statements identified in his pro se brief filed in the state trial court following the denial of his motion for new trial.

On March 8, 2010, the Georgia Court of Appeals affirmed.  Viers v. State, 303 Ga. App. 387, 693 S.E.2d 526 (Ct. App. 2010).  The Georgia Court of Appeals correctly noted that Viers's claims of ineffective counsel were governed by the two-prong standard in Strickland v. Washington.  Id. at 391, 693 S.E.2d at 530-31 (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984) (requiring a petitioner alleging ineffective counsel to show both deficient performance and prejudice)).  At the outset, the Georgia Court of Appeals indicated that it would address each of the "specific [ineffective assistance] arguments" made by Viers "separately."  Id. at 391, 693 S.E.2d at 531.

First, as to Dr. Aldridge's "ultimate issue" opinion testimony, the Georgia Court of Appeals noted, inter alia, that Viers contended that trial counsel should

---

[4]Although handwritten, we note that Viers's brief before the Georgia Court of Appeals was neat, coherent, and clearly organized.

11

have objected to Dr. Aldridge's testimony that she "had indicated that it was most likely that [HV] was physically abused by her mother and her father." Id. at 392, 693 S.E.2d at 531. The Georgia court concluded that Viers failed to show deficient performance:

> We disagree with Viers's characterization of Dr. Aldridge's testimony. When read in context with the question posed by Viers's counsel, it is clear that Dr. Aldridge was not expressing an opinion regarding whether the abuse occurred, but instead explaining that HV had accused both parents of abuse, as opposed to merely her father.

Id. The Georgia court also concluded that Viers failed to show prejudice:

> Nevertheless, pretermitting whether Dr. Aldridge's response to questioning constituted a comment on the ultimate issue in the case and whether trial counsel's decision not to object thereto constituted ineffective assistance of counsel, it does not require reversal because Viers has failed to establish that the testimony so prejudiced his defense as to affect the outcome of his trial. We are not persuaded that Dr. Aldridge's response was so significant that there is a reasonable probability that the outcome of the trial would have been different if counsel had objected thereto, especially in light of the physicians' testimony regarding HV's injuries, the inconsistencies in Viers' various versions of events, the blood found in the car seat, and the testimony and photographs—which the jury viewed—regarding the bruises and lacerations on HV.

Id. at 392, 693 S.E.2d at 531 (alteration adopted, quotation and footnote omitted).

Second, as to Dr. Aldridge's and Abercrombie's testimonies recounting HV's out-of-court statements, the Georgia Court of Appeals held that Viers failed to show deficient performance. Id. at 393-94, 693 S.E.2d at 532-33. The Georgia court reasoned that, "[p]retermitting whether the testimony was admissible, . . .

12

[c]learly, trial counsel made a strategic decision to attack the reliability of HV's statements during closing argument and with the testimony of Dr. Stark criticizing Dr. Aldridge's interview techniques." Id. at 394, 693 S.E.2d at 532. The Georgia Court of Appeals did not reach the prejudice prong. See id. at 394, 693 S.E.2d at 532-33. The Georgia court also denied Viers's motion to reconsider its rulings.

## E.    Federal Habeas Proceedings

On March 3, 2011, Viers filed the instant § 2254 habeas petition in the district court. Viers's petition claimed (1) trial counsel Powell rendered ineffective assistance by failing to object to Dr. Aldridge's opinion testimony and the recounting of HV's out-of-court statements to Dr. Aldridge and Abercrombie; and (2) the trial court violated his Due Process and Confrontation Clause rights by allowing the testimony and statements. The district court denied the § 2254 petition, and this appeal followed.

This Court granted Viers a certificate of appealability ("COA") on these issues and counsel to brief them:

> (1) Whether Mr. Viers's trial counsel rendered ineffective assistance by failing to object to the opinion testimony of Dr. Nancy Aldridge;
>
> (2) Whether Mr. Viers's trial counsel rendered ineffective assistance by failing to object to the admission of [HV's] out-of-court statements;
>
> (3) Whether Mr. Viers has established cause and prejudice for failing to raise his objections to the testimony of Dr. Aldridge and the out-of-court statements of [HV]; and

13

(4) If so, whether Mr. Viers's constitutional rights were violated by the admission of Dr. Aldridge's testimony and the out-of-court statements of [HV].

Below, we outline the federal habeas law applicable to Viers's claims. We then discuss the first two issues separately and the final two issues jointly.

## II. AEDPA DEFERENCE

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts are precluded from granting habeas relief on claims that were previously "adjudicated on the merits" in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When a state court decision summarily rejects without discussion all the claims raised by a defendant, including a federal claim subsequently pressed in federal court, the federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Harrington v. Richter, 562 U.S. 86, 97-100, 131 S. Ct. 770, 783-85 (2011). And "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met

14

by showing there was no reasonable basis for the state court to deny relief." Id. at 98, 131 S. Ct. at 784.  This presumption also applies, subject to rebuttal, to cases in which the state court discusses some of the defendant's claims but "rejects a federal claim without expressly addressing that claim." Johnson v. Williams, 568 U.S. ___, ___, 133 S. Ct. 1088, 1096 (2013).  The Johnson "Court observed that there are good reasons why state courts do not address every single argument made by a defendant, including 'instances in which a state court may simply regard a claim as too insubstantial to merit discussion.'" Lee v. Comm'r, Alabama Dep't of Corr., 726 F.3d 1172, 1212 (11th Cir. 2013), cert. denied sub nom. Lee v. Thomas, 134 S. Ct. 1542 (2014) (quoting Johnson, 568 U.S. at ___, 133 S. Ct. at 1095).

However, when the evidence "leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court," the Supreme Court in Johnson held that § 2254(d) deference does not apply.  568 U.S. at ___, 133 S. Ct. at 1097.  Where it is unclear whether AEDPA deference applies, "[c]ourts can . . . deny writs of habeas corpus under § 2254 by engaging in de novo review . . . because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review." Berghuis v. Thompkins, 560 U.S. 370, 390, 130 S. Ct. 2250, 2265 (2010).

The phrase "contrary to" means that the state court decision contradicts the United States Supreme Court on a settled question of law or holds differently than

15

did the Supreme Court on a set of materially indistinguishable facts.  Lockyer v.

Andrade, 538 U.S. 63, 73, 123 S. Ct. 1166, 1173 (2003).  The pivotal question in

most federal habeas cases is whether the state court's application of clearly

established federal law was unreasonable.  See Harrington, 562 U.S. at 101, 131 S.

Ct. at 785.  "[A]n unreasonable application of federal law is different from an

incorrect application of federal law," Williams v. Taylor, 529 U.S. 362, 410, 120 S.

Ct. 1495, 1522 (2000); indeed, "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable," Harrington, 562 U.S. at 102,

131 S. Ct. at 786.  We may issue a writ of habeas corpus only when "the state

court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement."  Id. at 103, 131 S. Ct. at

786-87.  As long as "some fairminded jurists could agree with the state court's

decision, although others might disagree, federal habeas relief must be denied."

Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011).

    As the Supreme Court recently reiterated, "a state-court factual

determination is not unreasonable merely because the federal habeas court would

have reached a different conclusion in the first instance."  Burt v. Titlow, 571 U.S.

___, ___, 134 S. Ct. 10, 15 (2013) (quotation and citations omitted).  "[E]ven if

reasonable minds reviewing the record might disagree about the [fact] finding in

question, on habeas review that does not suffice to supersede the [state] trial court's determination." Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849 (2010) (quoting Rice v. Collins, 546 U.S. 333, 341-42, 126 S. Ct. 969, 976 (2006)) (alterations omitted).

This "highly deferential standard" demands that "[t]he petitioner carries the burden of proof," Cullen v. Pinholster, 563 U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011) (quotations omitted), and "that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002). This standard is "doubly deferential" when a claim of ineffective assistance is evaluated under the § 2254(d)(1) standard. Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Under Strickland, to establish constitutionally ineffective counsel, a petitioner must show both (1) that his attorney's performance was deficient and (2) that the deficient performance prejudiced the defense. Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003) (discussing Strickland); Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

The Strickland performance standard is objectively reasonable attorney conduct under prevailing professional norms. Wiggins, 539 U.S. at 521, 123 S. Ct. at 2535; Strickland, 466 U.S. at 688, 104 S. Ct. at 2065 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). Scrutiny of counsel's performance is highly deferential, and a strong presumption exists that counsel's performance fell within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

The petitioner must show that no reasonable counsel would have taken the action that his counsel did take. See Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel is not deficient so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). When assessing an attorney's decisions, we must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Additionally, counsel cannot be deemed ineffective for failing to anticipate a change in the law. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994).

For prejudice, the standard is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To satisfy the

18

prejudice prong, the "likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112, 131 S. Ct. at 792. "Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 104, 131 S. Ct. at 787-88 (quotation omitted).

## IV. OPINION TESTIMONY CLAIM

On appeal, petitioner Viers, through counsel, argues that the Georgia Court of Appeals unreasonably applied Strickland in rejecting his claim that trial attorney Powell rendered ineffective assistance in failing to object to Dr. Aldridge's statement that it was most likely that HV was physically abused by both her mother and father.

Here, Viers has not shown that the Georgia Court of Appeals's rejection of this claim was contrary to, or an unreasonable application of, Strickland, or involved an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The Georgia Court of Appeals's interpretation of the statement—that Dr. Aldridge was explaining that she had indicated in her report that HV accused both parents of abuse, not merely Viers—was not unreasonable. As recounted above, defense counsel asked Dr. Aldridge whether her conclusion was that the only person HV had accused was her father. Although perhaps not precisely phrased, Dr. Aldridge's response was that, "up another sentence" in the report, she "had indicated" that HV accused both parents of abuse. Thus, Dr. Aldridge was

19

testifying as to whom HV accused of abusing her—not giving a conclusion about who actually abused her.

Therefore, this testimony did not impermissibly go the ultimate issue of who abused HV.  See McFolley v. State, 289 Ga. 890, 892, 717 S.E.2d 199, 201 (2011) (holding that expert testimony that the victim's injuries were caused by abuse, not an accidental fall, was not an opinion on the ultimate issue, which was the identity of the person responsible for the abuse); Collum v. State, 281 Ga. 719, 722, 642 S.E.2d 640, 644 (2007) (holding that trial court did not err in denying motion for mistrial based on expert's testimony that victim was beaten to death because "the ultimate issue was the identity of the person or persons responsible for the beating").  Fairminded jurists could disagree on the correctness of the Georgia Court of Appeals's decision, as Dr. Aldridge's statement was not clearly objectionable or excludable under Georgia law.  See Harrington, 562 U.S. at 105, 131 S. Ct. at 788; Loggins, 654 F.3d at 1220.

Viers also asserts that the Georgia Court of Appeals overlooked his remaining claims of ineffective assistance based on Dr. Aldridge's improper opinion testimony, and thus these claims should receive de novo review.

Having reviewed the record and the Georgia Court of Appeals's decision, we are not led "very clearly" to the conclusion that the court inadvertently overlooked Viers's additional claims of improper opinion testimony.  See Johnson,

20

568 U.S. at ___, 133 S. Ct. at 1097.[5]  Notably, when moving for reconsideration,

Viers did not claim that the Georgia Court of Appeals had overlooked these claims.

See id. at ___, 133 S. Ct. at 1099 (reasoning that petitioner, who "presumably

knows her case better than anyone else," did not petition the state appellate court

for rehearing on grounds that the court failed to adjudicate her federal claim on the

merits, such that an oversight seemed "most improbable").  Rather, Viers's motion

to reconsider distinguished between claims that he contended the Georgia Court of

Appeals had "overlooked" and those he wished the court to "reconsider," and he

specifically requested reconsideration of all of his claims regarding Dr. Aldridge's

supposedly improper opinion testimony.

Thus, giving deference to the Georgia Court of Appeals's merits

adjudication of the ineffective assistance claims based on failure to object to

improper opinion testimony, we cannot say that the Georgia Court of Appeals

unreasonably denied relief on these ineffective-counsel claims.  Viers points to Dr.

Aldridge's testimony that HV could show Dr. Aldridge what "happened to the doll

because it happened to [HV]"; that HV had "definite medical findings" and that her

demonstrations on the dolls were not "just a coincidence"; that HV was

---

[5]Viers did not raise these claims in the state trial court prior to the denial of his motion for new trial.  However, when he raised the claims in his appellate brief, the Georgia Court of Appeals—"the last state court rendering a judgment in the case"—did not "clearly and expressly" deny relief on these claims based "on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989) (quotations omitted).  Thus, procedural default does not bar consideration of these claims, and we must decide whether the Georgia Court of Appeals silently adjudicated the claims on the merits or overlooked them.

traumatized and concerned "it might happen again"; and that HV's behavior was "consistent" with having been abused.

None of Dr. Aldridge's statements was clearly objectionable under Georgia law because none went to the ultimate issue of who abused HV. See McFolley, 289 Ga. at 892, 717 S.E.2d at 201. Moreover, in child sex abuse cases, Georgia courts have distinguished between expert testimony that the victim had in fact been sexually abused and testimony, like in this case, that a victim's "physical examination and related behavior were consistent with sexual abuse." See, e.g., Odom v. State, 243 Ga. App. 227, 229, 531 S.E.2d 207, 210 (Ct. App. 2000) ("[The expert's] testimony was a permissible expression of the expert's opinion based on factors beyond the ken of the average juror. The jury was permitted to draw for itself the final conclusion as to whether the victim had, in fact, been sexually abused." (footnote omitted)). Nor did Dr. Aldridge's testimony "improperly bolster" HV's credibility. See id. at 227-28, 531 S.Ed.2d at 208-09 ("[T]here is absolutely nothing wrong with expert opinion testimony that bolster's [sic] the credibility of the indicted allegations of sexual abuse, e.g., 'the victim's physical examination showed injury consistent with sexual abuse,' or 'the victim's psychological evaluation was consistent with sexual abuse.' . . . Since the State is required to prove its case, expert opinion testimony often becomes necessary, especially in instances of the abuse of very young children." (emphasis added)).

22

As this testimony was not automatically, or even clearly, entitled to exclusion under Georgia law, a reasonable attorney in Powell's position could have declined to object based on the belief that (1) the objections would be unsuccessful, and (2) unsuccessful objections might overemphasize the statements to the jury by drawing attention to the statements as particularly damaging to the defense. See Bates v. Sec'y, Florida Dep't of Corr., 768 F.3d 1278, 1299 (11th Cir. 2014) (noting that a potentially unmeritorious objection "might end up backfiring by highlighting testimony the jury might have otherwise ignored completely"). Attorney Powell further reasonably could have concluded that the most prudent option would be to challenge Dr. Aldridge's testimony as a whole by attacking her methodology and objectivity during cross-examination, through Dr. Stark's testimony, and during closing argument. Thus, the Georgia Court of Appeals reasonably could have rejected Viers's ineffective assistance claim as to this testimony based on the performance prong.[6]

Additionally, even assuming deficient performance, we cannot say that the Georgia Court of Appeals unreasonably concluded that Viers failed to show prejudice in light of the overwhelming evidence against him. See Viers, 303 Ga. App. at 392, 693 S.E.2d at 531. This evidence included: Viers's shifting and

---

[6]Alternatively, even assuming that the Georgia Court of Appeals overlooked Viers's remaining ineffective assistance claims based on Dr. Aldridge's opinion testimony, we conclude that these claims do not warrant relief when reviewed de novo. See Thompkins, 560 U.S. at 390, 130 S. Ct. at 2265 ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies . . . .").

23

implausible accounts of how HV sustained her injuries; physical evidence and expert testimony regarding the extent and nature of HV's injuries that refuted Viers's explanations of what happened to HV; wounds consistent with repeated penetration of HV's anus; and testimony about HV's fear of men and of soiling her diaper. Even if all of Dr. Aldridge's challenged testimony were excluded, the Georgia Court of Appeals did not unreasonably apply <u>Strickland</u> or make an unreasonable determination of fact in finding no reasonable probability of a different result at trial. See <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

## V. HV'S OUT-OF-COURT STATEMENTS

On appeal, petitioner Viers, through counsel, argues that trial attorney Powell rendered ineffective assistance in failing to object to the admission of HV's out-of-court statements through the testimony of Dr. Aldridge and HV's foster father Abercrombie. Viers contends that the Georgia Court of Appeals unreasonably denied relief on this claim because the statements (1) bore none of the indicia of reliability required by the Georgia Child Hearsay statute and (2) violated his Confrontation Clause rights. We address the Georgia Child Hearsay statute and then the Confrontation Clause.

### A.    Georgia's Child Hearsay Statute

At the time of Viers's 2002 trial, Georgia's Child Hearsay statute, O.C.G.A. § 24-3-16, allowed a victim child's statements to another person to be admitted if

24

the child was available to testify and if the court found sufficient indicia of

reliability:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

Ga. Code Ann. § 24-3-16.[7]

Georgia courts have explained that "indicia of reliability" must spring from

the circumstances of the statement. Gregg v. State, 201 Ga. App. 238, 240, 411

S.E.2d 65, 68 (Ct. App. 1991). The factors a court may consider include but are

not limited to:

> (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.

---

[7]This version of the Georgia Child Hearsay statute subsequently was repealed, effective January 1, 2013. Irving v. State, 320 Ga. App. 844, 850 & n.18, 740 S.E.2d 778, 784 & n.18 (Ct. App. 2013).

25

Id.  Georgia courts have cautioned that "[t]hese factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness."  Id.  Additionally, "the fact that the statement is made days, weeks, or even several months after the alleged incident, [does not] in and of itself make the statement unreliable."  Id.

Here, we cannot say that the Georgia Court of Appeals—in concluding that Powell did not render deficient performance by failing to object to HV's out-of-court statements on state-law grounds—reached a result that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence.  See 28 U.S.C. § 2254(d).  Put simply, the Georgia Court of Appeals's ruling on this claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 562 U.S. at 103, 131 S. Ct. at 786-87.

While Viers contends that trial attorney Powell should have objected to the hearsay statements based on Georgia's Child Hearsay statute, § 24-3-16, the Georgia Court of Appeals reasonably concluded that attorney Powell instead made a sound strategic decision to attack the reliability of HV's statements with the testimony of a highly qualified expert, Dr. Stark, criticizing Dr. Aldridge's

interview techniques, and then later in his closing argument.  Attorney Powell

reasonably settled on this strategy given that a motion in limine was unlikely to be

successful.  See Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989) (holding that

where "claims were meritless, it was clearly not ineffective for counsel not to

pursue them").

Viers has not shown that no reasonable attorney would have made this

decision.  See Rogers, 13 F.3d at 386 ("Even if many reasonable lawyers would

not have done as defense counsel did at trial, no relief can be granted on

ineffectiveness grounds unless it is shown that no reasonable lawyer, in the

circumstances, would have done so.").  For starters, attorney Powell's testimony

indicated that motions challenging § 24-3-16 hearsay testimony are generally very

difficult to win.  As Powell put it, "there's not much case law out there where the

statements are thrown out because of indicia of reliability.  There are a few.  But it

seems to be a fairly rare experience."

Indeed, the vast majority of Georgia appellate cases examining the

admissibility of § 24-3-16 hearsay statements, even by very young children, find

that the testimony was sufficiently reliable and properly admitted.  See Irving v.

State, 320 Ga. App. 844, 845, 850-51, 740 S.Ed.2d 778, 781, 784-85 (Ct. App.

2013) (three-year-old); Whorton v. State, 321 Ga. App. 335, 335, 340-41, 741

S.E.2d 653, 655, 658-59 (Ct. App. 2013) (four-year-old); Estrada v. State, 319 Ga.

App. 762, 764-65, 738 S.E.2d 344, 346 (Ct. App. 2013) (six-year-old); Herrington v. State, 241 Ga. App. 326, 327, 329, 527 S.E.2d 33, 34-35 (Ct. App. 1999) (five-year-old); Heard v. State, 221 Ga. App. 166, 166-67, 471 S.E.2d 22, 22-23 (Ct. App. 1996) (seven-year-old); In re B.H., 190 Ga. App. 131, 131, 133, 378 S.Ed.2d 175, 176-77 (Ct. App. 1989) (two-and-one-half-year-old); Westbrook v. State, 186 Ga. App. 493, 495, 368 S.E.2d 131, 134 (Ct. App. 1988) (five-year-old); Sanders v. State, 182 Ga. App. 581, 584, 356 S.E.2d. 537, 540 (Ct. App. 1987) (four-year-old); Newberry v. State, 184 Ga. App. 356, 356-57, 361 S.E.2d 499, 500-01 (Ct. App. 1987) (four-year-old); but see Ferreri v. State, 267 Ga. App. 811, 812, 814, 600 S.Ed.2d 793, 793, 795 (Ct. App. 2004) (between ages of one-and-one-half and three-and-one-half years old); Rolader v. State, 202 Ga. App. 134, 140-41, 413 S.E.2d 752, 757-58 (Ct. App. 1991) (four-and-one-half-year-old).

In addition, attorney Powell did not unreasonably determine that the hearsay statements in this case had sufficient "indicia of reliability" to be admissible under § 24-3-16.  HV's statements bore many of the markers of reliability that Georgia courts have found to be significant in upholding the admissibility of hearsay under § 24-3-16: (1) HV's statements to Dr. Aldridge occurred in a controlled setting with a forensic interviewer, not a law enforcement officer, see Whorton, 321 Ga. App. at 341, 741 S.E.2d at 659; Estrada, 319 Ga. App. at 764, 738 S.Ed.2d at 346; (2) Dr. Aldridge did not reward, or otherwise positively reinforce, HV's answers,

28

see Whorton, 321 Ga. App. at 341, 741 S.E.2d at 659; (3) HV's statements to her foster father, Abercrombie, were spontaneous, see Newberry, 184 Ga. App. at 357, 361 S.E.2d at 501; and (4) there is no indication that HV was intoxicated or under the influence of any substances at the time of her statements to Dr. Aldridge and Abercrombie, see Estrada, 319 Ga. App. at 764, 738 S.Ed.2d at 346.

Although Viers stresses HV's young age, Georgia courts have upheld the admission of hearsay statements by children this young. See, e.g. In re BH, 190 Ga. App. at 131, 133, 378 S.Ed.2d at 176, 177 (two-and-one-half-year-old); Irving, 320 Ga. App. at 845, 850-51, 740 S.Ed.2d at 778, 784-85 (three-year-old). And the child's age is just one among many factors that bear on reliability under Georgia law. See Gregg, 201 Ga. App. at 240, 411 S.E.2d at 68. Likewise, child hearsay statements are not automatically rendered unreliable just because they occurred months after the events in question, see id., or because they occurred over the course of repeated sessions with a forensic interviewer, see, e.g., Westbrook, 186 Ga. App. at 495-96, 368 S.E.2d at 134 (upholding admissibility of five-year-old victim's hearsay statements that occurred over course of eleven counseling sessions with Dr. Aldridge).

Viers also points out a number of factors arguably showing the unreliability of the statements, but this ignores the fact that we must view the evidence in the light most favorable to trial counsel's reasonable strategy without the distorting

29

effects of hindsight.  Cf. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

Additionally, attorney Powell could reasonably have concluded that these factors

(such as inconsistencies in HV's statements) were issues that he could highlight to

the jury—as, in fact, he did—and not grounds for having the evidence excluded

under the statute.  See Herrington, 241 Ga. App. at 329, 527 S.E.2d at 35

("Because there were sufficient indicia of reliability, any alleged inconsistencies in

the statements were a matter for the jury's consideration in weighing the evidence,

not a matter of admissibility.").

Finally, we find unpersuasive Viers's reliance on Ferreri and Rolader, two

cases where Georgia trial courts were found to have committed reversible error in

admitting child hearsay statements.  Although Ferreri and Rolader did involve

young children under the age of five and arguably share some characteristics with

this case, Ferreri and Rolader are materially and critically distinguishable from this

case on at least one important fact.  In both those cases, there was little to no

physical evidence corroborating the victims' hearsay statements implicating the

defendants.  In Ferreri, "[m]ultiple medical examinations of the victim found no

physical evidence of molestation."  267 Ga. App. at 812, 600 S.Ed.2d at 793.  And

in Rolader, a physical examination of the child's vaginal area showed a "very red"

labia but no "tearing" or "gapping," and the examining physician stated that the

30

redness "could have been caused by the use of a bubble bath or harsh soaps or by contact with sand and dirt." 202 Ga. App. at 136, 413 S.E.2d at 754.

Here, in contrast, HV's statements were corroborated by the medical evidence of penetration of her anus and her badly lacerated perineum.  Her injuries were so severe as to require corrective surgery by a pediatric surgeon and were consistent with her statements describing how Viers hurt her.  Cf. Irving, 320 Ga. App. at 851, 740 S.Ed.2d at 785 (noting that "the child specified that she was struck with a belt and a stick, which is consistent with the injuries she received").  Thus, applying Georgia law, the Georgia Court of Appeals reasonably could have concluded that trial counsel Powell was not deficient for failing to object to HV's hearsay statements even in light of Ferreri and Rolader.

## B.    The Confrontation Clause

As to Viers's contention that attorney Powell should have objected to HV's out-of-court statements on Confrontation Clause grounds, we likewise conclude that the Georgia Court of Appeals reasonably determined that Powell did not perform deficiently.

The Sixth Amendment's Confrontation Clause provides that a criminal defendant has the right to be confronted with the witnesses against him.  U.S. Const. amend. VI.  At the time of Viers's 2002 trial, the Supreme Court had held, in Ohio v. Roberts, that when a hearsay declarant is not present for cross-

examination at trial, an out-of-court statement is admissible if (1) the government shows that the declarant is unavailable, and (2) the statement bears particularized guarantees of trustworthiness or falls within a firmly rooted hearsay exception. 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980).

Subsequently, in Idaho v. Wright, the Supreme Court considered a Confrontation Clause claim based on hearsay statements admitted pursuant to Idaho's statutory residual hearsay exception, which operated to allow the admission of out-of-court statements of a child victim of sexual abuse. 497 U.S. 805, 817, 110 S. Ct. 3139, 3147 (1990). The Supreme Court identified a non-exhaustive list of factors as to whether a child victim's hearsay statements bear "particularized guarantees of trustworthiness"—largely reflecting the same factors identified by the Georgia courts—and explained that courts have considerable leeway in their consideration of appropriate factors. See id. at 821-22, 110 S. Ct. at 3150.

After Viers's 2002 trial, the Supreme Court overruled Ohio v. Roberts and held that testimonial out-of-court statements are barred under the Confrontation Clause unless the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant, regardless of the statement's reliability. Crawford v. Washington, 541 U.S. 36, 68-69, 124 S. Ct. 1354, 1374 (2004). The Supreme Court reasoned that "[w]here testimonial statements are at issue, the only indicium

of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id.

Here, Viers argues that Powell should have objected to the out-of-court statements based on Roberts and Wright because the statements lacked "particularized guarantees of trustworthiness." However, for the same reasons we discussed above as to why the statements bore sufficient indicia of reliability, Viers has not demonstrated that the statements lacked "particularized guarantees of trustworthiness." See Wright, 497 U.S. at 821-22, 110 S. Ct. at 3150.[8]

On appeal, Viers also suggests that a Confrontation Clause violation occurred because, pursuant to the Georgia Child Hearsay statute, HV necessarily was "available to testify," O.C.G.A. § 24-3-16, while under Roberts "the proponent of an out-of-court statement [was required to] show the declarant's unavailability . . . ." However, Viers misunderstands Roberts, which required the unavailability of a hearsay declarant only if the declarant was not present for cross-examination at trial. See Roberts, 448 U.S. at 66, 100 S. Ct at 2539. In this case, although HV did not testify, the record indicates, and Viers essentially concedes, that she was present and available for cross-examination at his trial.

_____

[8]Trial attorney Powell reasonably could have found that HV's out-of-court statements bore "particularized guarantees of trustworthiness" even setting aside the fact that they were corroborated by the physical evidence in this case, a factor that is not relevant under the Confrontation Clause. See Wright, 497 U.S. at 822, 110 S. Ct. at 3150 ("To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.").

33

Prior to Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527 (2009), Georgia courts had held that the Confrontation Clause was satisfied where the hearsay declarant was available for cross-examination at trial even if she did not testify.  See, e.g., Starr v. State, 269 Ga. App. 466, 469, 604 S.E.2d 297, 299 (Ct. App. 2004), overruled by Hatley v. State, 290 Ga. 480, 722 S.E.2d 67 (2012). Thus, Viers has failed to show that, at the time of trial, the admission of HV's out-of-court statements ran afoul of the Confrontation Clause or that attorney Powell should have objected on that ground.

In addition, attorney Powell's performance was not deficient for failing to anticipate that the Supreme Court would overrule Roberts in Crawford.  See Spaziano, 36 F.3d at 1039.

## VI. PROCEDURAL DEFAULT

In his § 2254 petition in the district court, Viers alleged Due Process and Confrontation Clause claims, independent from his ineffective assistance claims, based on the admission of Dr. Aldridge's opinion testimony and HV's out-of-court statements.  In the district court, the State responded that Viers had procedurally defaulted these claims by failing to raise them in the state courts.  In its order, the district court found the claims to be procedurally defaulted.  The district court also determined that Viers had not shown cause for his default on grounds that: (1) Viers "[did] not attempt to assert a fundamental miscarriage of justice, i.e., his

34

actual innocence, to excuse his procedural default"; and (2) "because [Viers's] ineffective assistance of trial counsel claims fail, they may not serve as cause to excuse his procedural default of the underlying substantive claims."

As an initial matter, we decline to address Viers's arguments that these claims are not in fact procedurally defaulted, as the COA is limited to the issue of whether Viers has established cause and prejudice to overcome his default.  See Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998).  Based on the record, we agree with the district court that Viers has failed to show cause for failing to raise these claims in the state courts.  See Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  Even if we liberally construe Viers's arguments in the district court as alleging ineffective assistance as the cause of his procedural default, Viers cannot show cause for failure to object at trial—based on attorney Powell's ineffective assistance—because, as discussed above, Powell's failure to object to HV's statements and Dr. Aldridge's opinion testimony did not constitute ineffective assistance.  See Brownlee v. Haley, 306 F.3d 1043, 1066-67 (11th Cir. 2002).[9]  Finally, because Viers has failed to establish cause to overcome the procedural default of these claims, we do not address the merits of the claims.

---

[9]We decline to address Viers's argument on appeal that the state trial court's improperly allowing him to proceed pro se in his direct appeal constitutes cause, as Viers failed to raise this argument in the district court.  See Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994).

## VII. CONCLUSION

For the reasons set forth above, we affirm the district court's denial of Viers's § 2254 petition.

**AFFIRMED.**